

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00046-CV

IN THE INTEREST OF N.L.D., A CHILD

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 75,763

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter
Dissenting Opinion by Chief Justice Morriss

# OPINION

After a jury trial, the 354th Judicial District Court of Hunt County terminated Tamara Haines' parental rights to N.L.D. and appointed Jimmy and Angela Black, N.L.D.'s paternal great uncle and great aunt, as N.L.D.'s sole managing conservators. Haines appeals the lower court's judgment and argues that the trial court erred (1) because Jimmy and Angela lack standing and (2) because there is insufficient evidence to support the jury's findings upon which the termination and conservatorship orders were based. We affirm the trial court's ruling that Jimmy and Angela have standing and find that sufficient evidence supported the jury's verdict appointing Jimmy and Angela as managing conservators; however, we reverse the judgment terminating Haines' parental rights because the evidence was legally insufficient to support the jury's finding that termination was in N.L.D.'s best interest.

## I. Factual and Procedural Background

N.L.D. was born December 20, 2008, and lived with her mother, Haines, until 2010. In 2010, Jimmy and Angela, jointly with Geraldine Black, N.L.D.'s paternal great grandmother, filed a child custody action seeking the managing conservatorship of N.L.D.[1] Their petition alleged that Haines had neglected and physically abused N.L.D. Haines appeared at the first setting of a hearing on preliminary orders. The trial court reset the matter for August 12, 2010, at which time Haines failed to appear. A hearing was conducted on August 12, 2010, and the trial court appointed Geraldine, Jimmy, and Angela as temporary managing conservators of the

---

[1]N.L.D.'s father, Robert Lee Dobbins, who was incarcerated at the time the petition was filed, consented to the Blacks' petition.

child, allowing Haines visitation with N.L.D. at such times as might be agreed between the parties.

Although Haines had been duly served with citation, she filed no written response to the petition, and, after she failed to appear at the August 25, 2010, hearing, the trial court entered a default judgment, taking judicial notice of the testimony from the August 12, 2010, hearing. An order entered August 25, 2010, named Jimmy, Angela, and Geraldine sole managing conservators of N.L.D.[2]  Haines appealed the trial court's order.

On appeal, this Court reversed the trial court's order and remanded the case for a new hearing because Jimmy and Angela lacked standing as they were not related to N.L.D. within three degrees of consanguinity and because Haines was not given notice of the August 25, 2010, hearing. *See In re N.L.D.*, 344 S.W.3d 33 (Tex. App.—Texarkana 2011, no pet.).

On November 28, 2011, Haines answered the original petition. She also filed a counter-petition against Geraldine seeking possession of N.L.D., managing conservatorship, and a temporary restraining order. Haines alleged that Geraldine had a history of family violence during the two-year period preceding the suit. In her attached affidavit, she alleged that Geraldine had not allowed her to visit N.L.D. or speak with her on the telephone.

Jimmy and Angela filed a petition to intervene, seeking conservatorship of N.L.D. Jimmy and Angela alleged that they had standing because they had possession of N.L.D. in excess of six months. Haines moved to strike the petition to intervene, arguing, in part, that Jimmy and Angela lacked standing because they had no substantial past contact with the child.

---

[2]The order also named Dobbins the possessory conservator.

The trial court denied Haines' motion to strike and held that Jimmy and Angela had standing to intervene under Section 102.004(b) of the Texas Family Code.

The case was ultimately tried to a jury, which resolved all questions regarding termination and conservatorship in favor of Jimmy and Angela and against Haines. Geraldine was not named as managing conservator. The trial court entered orders in accordance with the jury's findings.

## II.     Standing to Intervene

Haines contends that Jimmy and Angela lacked standing to intervene in this matter and consequently, that the trial court erred in refusing to strike their petition to intervene. Specifically, Haines argues that Jimmy and Angela "should not be allowed to bootstrap their standing claim through the complicity and with the consent of one whose figurehead status as Temporary Managing Conservator is adversarial to the mother, and whose status as Temporary Managing Conservator is being actively contested." We conclude the trial court did not abuse its discretion in finding that Jimmy and Angela had standing.

In determining whether the trial court improperly denied Haines' motion to strike Jimmy and Angela's petition to intervene, we must decide if the trial court abused its discretion. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990); *In re N.L.G.*, 238 S.W.3d 828, 829 (Tex. App.—Fort Worth 2007, no pet.) (per curiam). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if it acts in an arbitrary or unreasonable manner. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). However, to the extent the trial court's ruling

4

depends on an issue of statutory interpretation, we review de novo the court's ruling. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) (citations omitted).

As a general rule, an individual's standing to intervene is commensurate with that individual's standing to file an original lawsuit. *Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A party's standing to file an original suit affecting the parent-child relationship is governed by Sections 102.003 (general standing) and 102.004(a) (additional standing for grandparent/close relative) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.003 (West Supp. 2012), § 102.004(a) (West 2008). Section 102.004(b) of the Texas Family Code provides a relaxed standing rule through which an individual without standing to file an original suit for managing conservatorship may nonetheless intervene in an ongoing suit. *See* TEX. FAM. CODE ANN. § 102.004(b) (West 2008); *see also Whitworth*, 222 S.W.3d at 621 (noting Section 102.004(b) "applies to interventions seeking managing conservatorships as well as those seeking possessory conservatorships"). Under Section 102.004(b),

> the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

TEX. FAM. CODE ANN. § 102.004(b).

5

Haines does not contest that Jimmy and Angela had substantial past contact[3] with the child; instead, she argues that they only have substantial past contact with N.L.D. because Geraldine "simply left the child in the possession of Jimmy Black and Angela Black." N.L.D. had lived with Jimmy and Angela for at least one year prior to their petition to intervene, and "satisfactory proof" supported a finding of impairment should Haines be appointed managing conservator.[4] *See* TEX. FAM. CODE ANN. § 102.004(b). At the time of the intervention, the "satisfactory proof" that appointment of the mother as managing conservator would impair the child was on record with the trial court and had been approved by this Court in a prior appeal. *See N.L.D.*, 344 S.W.3d at 38–39. Much of that evidence was ultimately challenged during this trial. While it would be preferable to conduct a hearing to develop more current information, the finding that the parent's appointment would impair the development of the child does not require an "immediacy" determination. *In re Vogel*, 261 S.W.3d 917, 921 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). We do not believe the trial court abused its discretion in deciding that Jimmy and Angela had standing. That finding, based on historical information, does not affect our current decisions regarding termination and conservatorship; these latter decisions are based on the evidence presented at the jury trial.

---

[3]The "substantial past contact" standard is not defined by statute or caselaw. *In re C.M.C.*, 192 S.W.3d 866, 871 (Tex. App.—Texarkana 2006, no pet.). Our inquiry is fact-intensive and should focus on the amount of actual contact. *Id.*; *see also Chavez v. Chavez*, 148 S.W.3d 449, 456 (Tex. App.—El Paso 2004, no pet.) (grandparents had standing to intervene when children lived with them for over a year); *In re A.M.*, 60 S.W.3d 166, 168 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (foster parents had standing when seventeen-month-old child resided with them for fourteen months); *In re M.T.*, 21 S.W.3d 925, 926 (Tex. App.—Beaumont 2000, no pet.) (foster parents had standing to intervene after children lived with them for fourteen months); *In re Hidalgo*, 938 S.W.2d 492, 495–96 (Tex. App.—Texarkana 1996, no writ) (step-grandmother had standing to file petition for managing conservator when she and child were close since child's birth and child resided with her).

[4]A parent appointed as managing conservator of a child has numerous rights. *See* TEX. FAM. CODE ANN. §§ 153.073, 153.132 (West 2008).

Haines' primary argument concerning standing is that the trial court should not have allowed conspiracy or conservatorship-by-proxy to establish standing under Section 102.004(b). However, there is no good-faith requirement in the rules on standing or intervention. Haines fails to cite any caselaw supporting her interpretation of the rules, and we are aware of none. Accordingly, we overrule this point of error.

## III.    Termination and Conservatorship—Standards of Proof and Appellate Review

Conservatorship of a child includes the day-to-day management of the child. Many decisions must be made by a parent or conservator on behalf of a child. Sometimes more than one person shares these duties, particularly after a divorce when both parents are often named as joint managing conservators. If circumstances require it, conservatorship of the child may be changed. Even if one parent is not the named managing conservator, that parent generally has access to and a relationship with the child. On the other hand, the decision to terminate parental rights is final and permanent—the parent is completely excised from the child's life and, of course, the child has no relationship with the parent. The law sets a much higher evidentiary requirement to authorize the termination of parental rights than for the selection of a conservator of a child.

In order to terminate the parent-child relationship, Section 161.001(1) of the Texas Family Code requires a court to find that at least one of the nineteen criteria listed in that section is satisfied. TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012). Section 161.001(1) defines with some precision parental conduct amounting to abandonment, neglect, or endangerment that

7

may justify termination.[5]  *Id.*  Additionally, there must be proof that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).  In contrast, Section 153.131(a) of the Texas Family Code, regarding conservatorship, imposes a more general standard that does not enumerate specific acts or omissions by the parent, but instead requires the court to find that appointing a parent would not be in the child's best interest because it would "significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a) (West 2008).  Clearly, the fundamental concern underlying both conservatorship and termination proceedings are the same:  the child's ultimate well-being. However, the evidence could be insufficient to support termination under the specific criteria of Section 161.001 while at the same time supporting the determination that appointment of a parent as conservator would impair the child's physical health or emotional development for reasons unrelated to the Section 161.001(1) criteria.

Moreover, the quantum of proof required to support a termination decision differs from the level necessary to support a conservatorship appointment.  Termination decisions must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012).  Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences.  *Santosky v. Kramer*, 455 U.S. 745, 759, 769–70 (1982); *see also In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002).  On the other hand, a finding that appointment of a parent as managing conservator would significantly impair

---

[5]Termination may be justified if a parent voluntarily leaves the child in a nonparent's possession with an expressed intent not to return, TEX. FAM. CODE ANN. § 161.001(1)(A), if the parent has failed to support the child in accordance with the parent's ability for a specified period, TEX. FAM. CODE ANN. § 161.001(1)(F), or has engaged in conduct that endangers the child's physical or emotional well-being, TEX. FAM. CODE ANN. § 161.001(1)(E).

8

the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard. TEX. FAM. CODE ANN. § 105.005 (West 2008); *see Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). These differing proof standards, in turn, affect the method of appellate review, which is more stringent for termination decisions than for those regarding conservatorship. *See J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

### A. Standard of Review—Termination

In evaluating the legal sufficiency of evidence supporting a termination, appellate courts must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *J.F.C.*, 96 S.W.3d at 266. Appropriate deference to the fact-finder's conclusions requires a court conducting a legal sufficiency review to view the evidence in the light most favorable to the judgment, assuming that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* The method employed to review the evidence may be the major distinction between a legal versus a factual sufficiency review of evidence when the standard is by clear and convincing evidence. In a legal sufficiency review, we must consider the evidence in the light most favorable to the judgment, whereas, in a factual sufficiency review we must review the evidence in a neutral light.

9

## B. Standard of Review—Conservatorship

In contrast with termination, conservatorship determinations are subject to review only for abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).[6] Jury findings underlying a conservatorship appointment are subject to ordinary legal and factual sufficiency review. *See, e.g.*, *Corrales v. Dep't of Family & Protective Servs.*, 155 S.W.3d 478, 488 (Tex. App.—El Paso 2004, no pet.). Under a legal sufficiency review, we consider only the evidence and inferences that support a factual finding in favor of the party having the burden of proof in a light most favorable to such findings and disregard all evidence and inferences to the contrary to determine whether there is any probative evidence which supports the finding. *Id.* at 488. When reviewing a claim of factually insufficient evidence, we must consider all of the evidence and determine whether the jury finding or verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 488–89.

Because different standards apply, evidentiary review that results in reversal of a termination order may not yield the same result for a conservatorship appointment. As the Texas Supreme Court has said, a "finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *C.H.*, 89 S.W.3d at 25.

---

[6]In a jury trial, a trial court may not render an order in contravention of the jury's findings. Tex. Fam. Code Ann. § 105.002(c)(1)(A) (West 2008).

**IV.    Sufficiency of Evidence—Termination and Conservatorship**

In its answer to questions one through three, the jury found by clear and convincing evidence that (1) Haines failed to support N.L.D. in accordance with her ability during a one-year period ending within six months of the date of the filing of the petition for termination, (2) Haines voluntarily left N.L.D. alone or in the possession of another without providing adequate support for her and remaining away for a period of at least six months, and (3) Haines knowingly placed N.L.D. in conditions or surroundings that endangered N.L.D.'s physical or emotional well-being and knowingly allowed her to remain in such conditions or surroundings. *See* TEX. FAM. CODE ANN. §161.001(1)(F), (C), (D).   The jury also found that termination of Haines' parental rights and appointment of Jimmy and Angela as sole managing conservators was in N.L.D.'s best interest.

"Along with a best interest finding, a finding of only one ground alleged under Section 161.001(1) is sufficient to support a judgment of termination." *In re D.W.*, 353 S.W.3d 188, 194 (Tex. App.—Texarkana 2011, pet. denied) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re K.G.*, 350 S.W.3d 338 (Tex. App.—Fort Worth 2011, pet. denied)).  Here, Haines fails to challenge the jury's finding regarding her failure to support N.L.D. in accordance with her ability during a one-year period ending within six months of the date of the filing of the petition for termination; therefore, we need not review her challenges to the sufficiency of the evidence supporting the jury's answers to the remaining questions because the jury's finding on the first question is sufficient under Section 161.001(1)(F) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 161.001(1)(F).   However, Haines separately challenges the legal and factual

11

sufficiency of the evidence supporting the jury's finding that termination of her parental rights and the appointment of Jimmy and Angela as sole managing conservators are in N.L.D.'s best interest. With one ground for termination being unchallenged (TEX. FAM. CODE ANN. § 161.001(1)(F)), we must affirm the termination if it is in the best interest of N.L.D. Because Haines also challenges the sufficiency of the evidence supporting the trial court's appointment of Jimmy and Angela as sole managing conservators, we address the two issues together.

Even though termination and conservatorship are reviewed under different standards, as detailed above, the same factors apply when determining the best interests of the child. In determining the best interests of the child, a number of factors have been considered, including (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[7]

The list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best-interest determination neither requires proof of any unique set of factors nor limits proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—

[7]Some of these factors are more applicable to the issue of conservatorship than termination. For example, the stability of the parent's home is much more relevant to determining if the child should live in that home than to deciding whether the parent-child relationship should be permanently severed. *Brokenleg v. Butts*, 559 S.W.2d 853, 857 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.). Often there is no relevant evidence presented that directly addresses all of these issues.

Fort Worth 2001, no pet.).  There is no requirement that the party seeking termination prove all nine factors.  *C.H.*, 89 S.W.3d at 27.  The analysis of evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child.  *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).  Evidence supporting the termination of parental rights is also probative of best interest.  *C.H.*, 89 S.W.3d at 28.  A parent's inability to provide adequate care for her child, lack of parenting skills, and poor judgment may be considered when looking at the child's best interests.  *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).  Parental drug abuse is also a factor to be considered in determining a child's best interests.  *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.).

Angela testified that N.L.D. had lived with them from August 2010, when N.L.D. was about nineteen months old, through the time of trial in the spring of 2013.  Jimmy and Angela frequently had the child prior to August 2010 as well.  Angela's trial testimony raised several significant issues/allegations that are relevant to both the issue of termination and conservatorship.  A summary of these issues/allegations follows:

- There was a span of one year and three months where Haines did not see N.L.D. at all, and she missed five visits with N.L.D. between November 2012 and the March 2013 trial date.  Haines answers that her visitation was limited to "mutual agreement only" and that she was refused any visitation for over a year.  (CR at 34.)

- Haines contributed no money at all to N.L.D.'s support since August 2010.

- Haines threatened to knock out Jimmy and Angela' car windows with a baseball bat.

- While Haines had the child, N.L.D. was frequently dirty or filthy.  Haines denies this allegation.

13

- Haines allowed a person who had been incarcerated to babysit N.L.D.

- Angela has seen Haines with drugs or drug paraphernalia four or five times.

- Haines used fish hooks as ornaments on her Christmas tree in 2009.

- Haines allowed smoking around N.L.D. even though N.L.D. had cardiovascular and respiratory issues.

- Haines has a history of domestic violence with N.L.D.'s father, though Haines disputes the details of these episodes.

- Haines canceled and missed doctor's appointments for N.L.D., though the medical records do not show a need for medical or surgical therapy.

On cross-examination, Angela admitted that she did not call the Texas Department of Family and Protective Services (Department) until Haines denied her access to the child. She testified that Haines had a history of drug use and violence, but she did not know whether Haines had "cleaned up." Angela had never seen Haines smoke marihuana, but several times she had seen Haines high on marihuana. Haines smokes tobacco products indoors; while Jimmy is also a smoker, he does so outside. Angela, herself, did not graduate from high school, but she homeschools her sixteen-year-old son, and her twenty-four-year-old son still lives with them.

Angela testified that when Haines refused her visitation with N.L.D. around February 2010, she called the Department and reported the marihuana use, drug paraphernalia, and condition of the home. Herbert Brister, a department employee, investigated Haines for allegations of neglectful supervision and medical neglect as a result of the call from Angela. He found her home to be clean, saw no drugs or paraphernalia, and opined that Haines was not high at the time of his visit. According to Brister, her son seemed healthy, well-mannered, and well

14

groomed. Brister also interviewed N.L.D.'s pediatrician. Brister's investigation did not validate any of Angela's allegations, and the Department did not remove the children from Haines' custody. Brister closed the department's case in May 2010. This suit was originally filed in August 2010.

Following the August 25, 2010, hearing, for which Haines had no notice, Haines' visitation with N.L.D. was restricted to "'such times as might be mutually agreed between the parties.'" *N.L.D.*, 344 S.W.3d at 36. Haines asserts that Jimmy and Angela prohibited her from visiting N.L.D. for over a year. In her testimony, Haines admitted to a drug history, caring for N.L.D. after using a controlled substance, and encountering domestic violence problems with N.L.D.'s father. She testified that she has been drug free for three and one-half years, that she was in a good, stable relationship, and that she had successfully taken steps to handle her prior legal troubles. Haines has another child, a thirteen-year-old son who is in fifth grade, for whom she neither sought nor obtained child support. Even though she and her current boyfriend were employed, she said she did not pay support to Jimmy and Angela because she felt like it was paying ransom.

On cross-examination, Haines admitted that she lied to a Department investigator about cutting herself in the past, a prior arrest for marihuana use, and the existence of an arrest warrant for failing to appear in California. She also told the investigator that she did not and would not communicate with N.L.D.'s incarcerated father, but she admitted on the stand that she had written him several letters telling him she wanted to reunite with him when he got out of jail.

15

She further admitted that in those letters, she lied to N.L.D.'s father about a miscarriage she never had.

Nancy Stark, an independent contractor appointed by the trial court, performed a social study in this case.[8]   Haines told Stark that she (Haines) loved marihuana.  Stark testified that Haines had chosen to have drugs as a part of her life and that she chose men with histories of using and selling drugs.  Stark was concerned that "after this is all over," Haines would start using again, though her current live-in boyfriend said he did not use drugs.  Stark had no reason to dispute Haines' claim of being drug-free for three and one-half years, but Haines' dishonesty throughout the process did concern Stark.  According to Stark, Haines missed about one out of every four scheduled visits with N.L.D.  Stark opined that this showed a lack of commitment on Haines' part.

At the time of trial, Haines was living with her boyfriend, Stephen Van Dusen, and they were expecting a child soon.  In terms of space, their home could easily accommodate both N.L.D. and the new child.  Stark noted that Van Dusen "has been a positive force in Ms. Haines' life."  Haines told Stark that she knew it would not be good for N.L.D. if she (Haines) got pregnant, and Stark was disappointed to learn that Haines did get pregnant because it showed insensitivity to N.L.D. and her needs.

Stark pointed out numerous problematic factors with Haines that did or would have a negative impact on N.L.D.'s physical and emotional development.  Stark testified,

---

[8]The study is focused on the background of the parties to assist the trial court in determining conservatorship and possession of the minor child.  Recommendations were made on those issues, but the study did not specifically address whether termination of parental rights was in the best interest of the child.  In her courtroom testimony, Stark opined that termination of Haines' parental rights was not in the best interest of the child.

Well, drugs foremost. Criminal behavior. Hooking up with men who are drug addicts, drug users, drug sellers. Both men that she was involved with before had a criminal history. Frequent moves from place to place. Living in different places, even in the same town a lot. [Haines' son's] lack of education. I mean, neglecting that education. Lack of child support, just to help support her. Not getting child support for [her son]. Just a history of bad decisions.

She recommended that Haines take random drug tests and, depending on the results of those tests, Stark also recommended that Haines be appointed possessory conservator and be given a gradually increasing amount of visitation.

Jimmy and Angela have a history of being stable, healthy, and law-abiding. Haines agreed that N.L.D. is "very bonded" with Jimmy and Angela, and Stark testified that Jimmy and Angela are N.L.D.'s psychological parents. Haines and Stark agreed that it would be traumatic to N.L.D. to take her away from Jimmy and Angela. Stark testified that Jimmy and Angela "have made steady, stable kind of decisions for their family." Stark further testified that "[Jimmy and Angela] were scared that [Haines] would take off with [N.L.D]."

In Stark's opinion, it was in N.L.D.'s best interest that Jimmy and Angela be named sole managing conservators because of a "culmination of a lot of things that make me feel like . . . [N.L.D.] would be compromised by going back to [Haines]." However, Stark did not believe terminating Haines' parental rights was in N.L.D.'s best interest because N.L.D. has a brother and would soon have a sister as well, and a relationship with her biological siblings would be meaningful to her life and important to her future development.

A.      **Conservatorship Decision**

As a parent, Haines is entitled to appointment as sole managing conservator of N.L.D. in the absence of a finding that such would not be in N.L.D.'s best interest because it would

significantly impair her physical health or emotional development. *See* TEX. FAM. CODE ANN. § 153.131(a). "[I]n an original proceeding for a conservatorship determination, even 'evidence that the nonparent would be a better custodian' is insufficient to support the appointment of a nonparent as managing conservator in preference to a parent." *In re M.T.C.*, 299 S.W.3d 474, 481 (Tex. App.—Texarkana 2009, no pet.) (quoting *Lewelling*, 796 S.W.2d at 167). "Rather, the nonparent is required to 'affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally.'" *Id.* (quoting *Lewelling*, 796 S.W.2d at 167).

Here, there is sufficient evidence supporting the jury's finding that Jimmy and Angela should be appointed sole managing conservators. N.L.D., who was born December 20, 2008, has lived the last three of her approximate five-year life with Jimmy and Angela. Together with Haines' history of drug use, irresponsibility, frequent moves, and bad judgment, the evidence is sufficient for a reasonable jury to find by a preponderance of the evidence that appointing Haines as the sole managing conservator, and thereby granting her the right to designate N.L.D.'s primary residence, would significantly impair N.L.D.'s physical or emotional development. In contrast, there is substantial evidence that Jimmy and Angela are stable, loving parents to N.L.D. and that removing her from their care would be very detrimental to her health and well-being. Therefore, we overrule Haines' point of error as to conservatorship.

## B. Termination Decision

The more difficult issue in this case is whether it is in N.L.D.'s best interest that Haines' parental rights be terminated. We are to strictly scrutinize termination proceedings in favor of

the parent. *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). Termination "'can never be justified without the most solid and substantial reasons.'" *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (quoting *State v. Deaton*, 54 S.W. 901, 903 (Tex. 1900)); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). Again, in evaluating the propriety of the termination decision in this case, we examine all the evidence in both the light most favorable to the jury's finding (legal sufficiency) and in a neutral light (factual sufficiency) to determine whether a reasonable trier of fact could have formed a firm belief or conviction that termination of Haines' parental rights was in N.L.D.'s best interest. TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25.

Prior to August 2010, the Department investigated Haines based upon allegations that largely match the testimony produced at trial, including Haines' drug use, domestic violence, neglect of N.L.D.'s medical condition and physical health, and provision of an unsafe home environment. Whereas most termination cases result from such an investigation and involve the Department, which has standards and guidelines to follow prior to attempting termination, this case was not accepted by that agency and is a private dispute.[9] N.L.D. was neither removed from the home by the Department, nor was she placed under governmental supervision, because the investigation did not validate the allegations; rather, the investigator found no evidence of drugs, a clean house, and healthy, well-groomed children. N.L.D.'s physician was interviewed, and no medical neglect was noted by the investigator.

---

[9]Additionally, no attorney ad litem, guardian ad litem, amicus attorney, or Court-Appointed Special Advocate volunteer was appointed on behalf of N.L.D. in this case.

There is no evidence of domestic violence or arrests after August 2010; the primary evidence favoring termination of Haines' parental rights is her admitted history of drug use. Haines testified that she has been drug free for more than three years, and while a jury might be skeptical of that testimony, there was no evidence contrary to Haines' testimony. Angela did not know whether Haines remained drug free after August 2010, and Stark had no reason to dispute Haines' claim. Evidence that a person has recently improved her life weighs against a finding that termination is in the best interest of the child. *In re K.C.M.*, 4 S.W.3d 392, 396–39 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Stark's report confirms that Haines is employed, has a decent home life, a home environment that can accommodate more children, and an employed, live-in boyfriend that is a positive influence on her life. The social study acknowledged Haines' history of marihuana usage and raised a concern that it might recur; however, the study did not recommend termination. According to Stark's testimony and her social study, termination was not in N.L.D.'s best interest because N.L.D.'s emotional and psychological development would benefit from knowing and having contact with her mother, brother, and soon-to-arrive baby sister.[10]

We recognize that the evidence supporting a ground of termination may also support a finding that termination is in the best interest of the child. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). It is undisputed that Haines did not support the child while she was in the custody of Jimmy and Angela; accordingly, the jury finding on that issue is

---

[10]"However, the Blacks cannot ignore or dismiss the fact that [N.L.D.] has a biological family. For [N.L.D.'s] sake they need to try and work with Ms. Haines in a respectful and cordial manner so that [N.L.D.] can live in peace between the two families. No matter the outcome of this lawsuit[, N.L.D.] loves everyone and deserves the opportunity to have a safe and happy relationship with all the important people in her life."

sufficient to satisfy the grounds for termination. Haines testified that she did not financially support N.L.D. because she felt as if she were paying ransom. For this, we agree that Haines acted irresponsibly and perhaps without good judgment or even advice, but this ground alone would not be sufficient to justify a finding that termination was in the best interest of the child. *Id.* ("there are also those cases where the best interest determination must have a firm basis in facts standing apart from the offending behavior"); *In re M.A.N.M.*, 75 S.W.3d 73, 79 (Tex. App.—San Antonio 2002, no pet.) (finding of failure to support child not so egregious, on its own, to warrant finding that termination is in child's best interest).

The jury found that Haines voluntarily left the child alone or in the possession of another without providing adequate support for the child and remaining away for a period of at least six months. There is no evidence to support a finding that Haines "voluntarily" left her child with Jimmy and Angela. Jimmy and Angela obtained possession of the child as a result of court intervention; Haines has objected to Jimmy and Angela's continued possession of the child. This finding yields no support to the jury determination that termination was in the best interest of the child.

The jury also found that Haines placed the child in conditions or surroundings that endangered N.L.D.'s physical or emotional well-being. There is disputed testimony that Haines failed to take N.L.D. to needed medical appointments, that three and one-half years ago she used marihuana, and that she formerly lived with an abusive husband. While this evidence provides minimal support for the grounds for termination, it does not add additional information not already considered on the issue of best interest. Further, the evidence supporting this violation is

21

not so egregious that it should deprive N.L.D. of the benefits she will receive from a continued relationship with her biological family. The trial court has broad discretion to specify the rights of conservators as well as appropriate levels of possession and access to the child.

Even when viewing all the evidence in the light most favorable to the finding, we deem the evidence insufficient to allow a reasonable trier of fact to form a firm belief or conviction, based on clear and convincing evidence, that termination of Haines' parental right was in N.L.D.'s best interest. We affirm the trial court's appointment of Jimmy and Angela as managing conservators, but having found the evidence legally insufficient to support termination, we reverse the trial court's order terminating Haines' parental rights and remand the case for determination of possible managing conservatorship, possessory conservatorship, visitation, child support, and any other necessary orders.


Jack Carter
Justice



DISSENTING OPINION

While I agree with the majority opinion in most respects, I would hold that legally and factually sufficient evidence supports the jury finding that termination was in the best interest of the child. For that reason, I respectfully dissent.

Certainly, the determination by the Department of Family and Protective Services (Department) not to remove N.L.D. from Haines' home rests on its conclusion that removal was

not necessary and is evidence that weighs against a best-interest finding, but that determination does not require a jury to agree with the Department's conclusion. The jury is entitled to weigh all the evidence here, evidence which stands on both sides of the best-interest issue.

I agree that, alone, Haines' failure to support N.L.D. would not support a best-interest finding. But it is some evidence that, with the other evidence, supports a best-interest finding.

While the evidence of Haines' failure to take N.L.D. to needed medical appointments, her drug use, and her having been in an abusive relationship are historical and, thus, not necessarily controlling, the jury is entitled to consider those things in its best-interest deliberations and to weigh such evidence within the purview of its responsibility. The question of whether Haines is to be disqualified from having an ongoing parental relationship with N.L.D. is not based just on evidence mentioned in this paragraph, but, as the Legislature has decided, is a two-part decision: one or more substantive grounds for termination, not here contested, and the best-interest issue, which is to be determined by the fact-finder based on all the evidence.

I would conclude that a reasonable trier of fact could, based on this evidence, form a firm belief or conviction, based on clear and convincing evidence, that termination of Haines' parental rights to N.L.D. was in N.L.D.'s best interest.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 26, 2013
Date Decided:       October 23, 2013

23