

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| | § | No. 08-14-00053-CV |
| IN RE: H.R.L., | § | |
| | § | AN ORIGINAL PROCEEDING |
| Relator. | § | IN MANDAMUS |
| | § | |

## **O P I N I O N**

Relator, H.R.L., has filed this mandamus petition against the Honorable Mike Herrera, Judge of the 383rd District Court of El Paso County, Texas, asking that the Court order him to set aside four orders, including an interim temporary order awarding Kim Shumate, the child's great-aunt, possession of and access to the child when no showing has been made that the great aunt has standing. Relator is the mother of the child (hereafter referred to as "the child" or K.L.). The Real Parties in Interest are Shumate, the child's putative father, N.L.G., and the State of Texas. We conditionally grant mandamus relief.

*Factual Background*

On June 26, 2013, the Child Support Division of the Attorney General's Office initiated a Title IV-D action to establish paternity of the father and to enter an order for the payment of current and retroactive child support.[1]  Shumate filed a petition in intervention seeking to be

---

[1]  The case is styled *In the Interest of K.L., a Child* and is numbered 2013DCM4795.

named possessory conservator of the child without seeking leave of court to intervene. She also filed motions seeking temporary orders for temporary possessory conservatorship, possession and access to the child, appointment of an amicus attorney, and preparation of a social study. Relator filed a plea in abatement and plea to the jurisdiction asserting that Shumate did not have standing to intervene.

The trial court set Relator's plea in abatement and plea to the jurisdiction for a hearing on December 17, 2013, but it also set Shumate's motion for temporary orders to be heard in the same hearing. Shumate filed her second amended petition in intervention the day before the hearing. On the date of the hearing, Shumate filed a motion for Respondent to confer with the child. The parties appeared for the hearing and Relator objected at the outset that Shumate had failed to seek leave of court to intervene as required by Section 102.004(b) of the Family Code, and therefore, the court should dismiss the plea in intervention and the motion to confer filed by Shumate. The trial court overruled that objection and granted the motion to confer with the child. He ordered a social worker from the El Paso County DRO to meet with the child in the presence of Shumate.

On December 16, 2013, Kim Shumate filed an amended petition in intervention seeking to be appointed possessory conservator of the child. She also filed a supporting affidavit which alleged, in relevant part, that:

> K.L. has lived with me in my home from the time she was 1 1/2 years old until April of 2013.
>
> K.L. was in my sole care, custody and control for most of her life, from the time she was 1 1/2 years old until April 2013.
>
> K.L.'s mother is [Relator]. [Relator] is my niece. [Relator] left K.L. for me to raise when K.L. was a baby until April of 2013. For the last four years, [Relator] lived in New Mexico with various boyfriends. She would come visit K.L. sporadically on weekends.

Until April of 2013, I was the only person who made decisions regarding K.L.'s medical treatment and schooling. I am the person who fed K.L., bathed her, took her to school, helped her with school work, and put her to bed. I have raised K.L. for the majority of her life.

[Relator] took K.L. from my care in April of 2013 after her and I had an argument regarding the type of people that she brings into K.L.'s life. [Relator] had recently moved into a house in El Paso with a man who was married to another woman. I expressed to [Relator] that I did not want her to take K.L. around this person.

[Relator] has a pattern of neglect towards K.L. [Relator] has a pattern of jumping from one unstable home to another unstable home. She moves in with men that she hardly knows and exposes K.L. to these unstable homes.

K.L. has slight learning disabilities and these are exaggerated when she is taken from what she knows.

I have enrolled K.L. in private school and believe it is in her best interest to continue to attend the same school. She gets individualized attention that helps her to excel in her classes.

I know [N.L.G.], K.L.'s father, because he would come by my home and visit with K.L. on weekends. I would supervise these visits and I noticed that he was a loving and caring father.

[Relator] has not allowed me to see K.L. since April of 2013.

I do not believe it is in K.L.'s best interest for [Relator] and [N.L.G.] to be appointed joint managing conservators or that it is in K.L.'s best interest for either one of them to be appointed a sole managing conservator. I believe that they have both demonstrated that they are unable to act in K.L.'s best interest at this time.

I am asking that the court name me as a possessory conservator so that I can take part in any decisions regarding K.L.'s medical treatment[2] and her education.

I am asking that the court grant me possession and access to K.L. in whatever frequency that the court determines is in K.L.'s best interest.

Shumate is the only witness who testified at the hearing conducted on December 17, 2013. She is a licensed counselor and is the Clinical Director of the Juvenile Justice Center in

---

[2] K.L. has a speech impediment and attends speech therapy.

El Paso. Shumate is the sister of Relator's mother, and thus, is the child's great-aunt. Shumate lives with her mother. Relator's mother lives only two streets away from her. The child was six years of age at the time of the hearing.

Shumate testified that the child lived with her from the time of her birth in September 2007 and Relator initially lived with her mother. Relator moved in with Shumate sometime prior to 2009 but it is unclear exactly when this occurred. Relator lived with Shumate until 2009 when Relator began attending NMSU in Las Cruces, New Mexico. Relator lived in Las Cruces during the week but she returned to Shumate's home on the weekends. In the affidavit, Shumate averred that Relator visited only sporadically on weekends, but she made clear in her testimony that Relator "was very good about trying to maintain contact and coming down" to El Paso. She testified that Relator normally returned to El Paso on the weekends unless she had a school project which prevented it. While Relator occasionally did not return to El Paso for a month, this did not happen often.

Tension developed between Shumate and Relator because Shumate did not approve of the men Relator was dating. In early 2013, Shumate and Relator had an argument when she told Relator that she did not want K.L. to be around Relator's boyfriend at the time because he was married to someone else and had not obtained a divorce. In March 2013, Shumate threatened to file suit against Relator to obtain custody of the child. As a result of this disagreement and the threat to file suit, Relator and the child moved out of Shumate's home in April 2013.

In an effort to meet her burden under Section 102.004(b) of the Family Code, Shumate testified that she believed the child's emotional health is impaired because the child is not permitted to visit Shumate or the child's great-grandmother. Shumate testified that she had not been permitted by Relator to see the child since April 2013, but it was established on cross-

examination that she had seen the child on several occasions and Relator had permitted her to take the child on a trip to Colorado in the summer of 2013. Shumate also stated that the child is confused about the identity of her family because Relator has dated six different men since the child was born and the child does not have stability because she has been shuffled from home to home. The record shows, however, that K.L. was living with Shumate throughout most of this time period and it has only been since April of 2013 that Shumate's access has been restricted. At the time of the hearing, Relator and the child were living with Relator's mother. In response to questions asked by Respondent, Shumate testified that the child has spent 90 percent of the time with her from the child's birth until April 2013 and only 10 percent with Relator. Respondent then asked Shumate for her expert opinion regarding the effect on a child of not being able to spend time with the person with whom she had previously spent 90 percent of her time. Shumate responded, "Trauma. Traumatic."

The trial court recessed the hearing while the social worker interviewed the child. The social worker filed a written report with the court on December 18, 2013 (the day after the initial hearing). The report reflected that the child was happy to see Shumate and made comments like, "I hope mamma doesn't see us; she will get angry." The child became sad at the conclusion of the meeting, stating, "I want to be with you." The social worker concluded that the child was bonded to Shumate.

The court continued the hearing on the plea in abatement and the plea to the jurisdiction until January 10, 2014. The hearing did not proceed at 1 p.m. as scheduled because the parties met to negotiate a possible settlement. Relator's attorney left the courthouse after they concluded their negotiations. The trial court called the case at 4:30 and Relator's counsel appeared by telephone. He explained that he had left the courthouse because he had understood

the court was not going to hear the case that day. Counsel for N.L.G. and Shumate announced they had reached an agreement that Relator and N.L.G. would be appointed joint managing conservators with Relator as primary but Shumate would be appointed as possessory conservator. Relator's counsel stated that they had initially agreed but events transpired outside of the courtroom between various family members and Relator no longer agreed to the terms announced by N.L.G. and Shumate. Relator insisted that Shumate had not met her burden to establish standing under Section 102.004(b) and she had five witnesses she wished to present to controvert Shumate's testimony. Relator's attorney offered to immediately return to the courthouse but the trial court informed him that it was 4:34 p.m. and the hearing was going to conclude at 4:40. The court then stated:

> Based on the DRO report, I'm going to make a finding so far from the DRO that the child is very bonded to Ms. Shumate. I'm going to order that Ms. Shumate have access and possession with the child. I'm not going to name her any kind conservator [sic] until we find out the standing issue. Ms. Shumate will have access to the child, visitation with the child, not extended, standard possession order. And that will continue until the next setting. If your client wants to visit the child, Mr. Davis, he can visit the child at Ms. Shumate's house.

The written "interim temporary order" entered on January 16, 2014 provided that Shumate "shall have possession of and access to the child, [K.L.], according to the Standard Possession Order." Relator filed a mandamus petition and motion for emergency relief on February 5, 2014. The Court gave the Real Parties in Interest an opportunity to file responses, but none have been filed.

*Mandamus Standard and Relevant Law*

To be entitled to mandamus relief, a relator must meet two requirements. First, the relator must show that the trial court clearly abused its discretion. *In re Prudential Insurance Company of America*, 148 S.W.3d 124, 135 (Tex. 2004). Second, the relator must demonstrate that there is no adequate remedy by appeal. *Id*. at 136.

- 6 -

Relator asserts that the four orders entered by the trial court at the request of Shumate and in her favor are void because the court lacked subject matter jurisdiction to enter them and the entry of these orders without jurisdiction violated Relator's right to due process. It is fundamental that a party seeking conservatorship of a child must have standing to seek such relief. *See In re M.J.G.*, 248 S.W.3d 753, 757 (Tex.App.--Fort Worth 2008, no pet.); *In re S.S.J.-J.*, 153 S.W.3d 132, 134 (Tex.App.--San Antonio 2004, no pet.). Standing is implicit in the concept of subject matter jurisdiction. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex. 1993). A party's lack of standing deprives the trial court of subject matter jurisdiction and renders subsequent trial court action void. *Texas Association of Business*, 852 S.W.2d at 443; *In re Smith*, 260 S.W.3d 568, 572 (Tex.App.--Houston [14th Dist.] 2008, orig. proceeding).

In *Troxel v. Granville*, the United States Supreme Court recognized that parents have a liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060-2061, 147 L.Ed.2d 49 (2000); *Bates v. Tesar*, 81 S.W.3d 411, 435 (Tex.App.--El Paso 2002, no pet.). Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2060. This fundamental right is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2061. The Due Process Clause does not permit a state to infringe on this fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made. *Bates*, 81 S.W.3d at 435; *In re Aubin*, 29 S.W.3d 199, 200 (Tex.App.--Beaumont 2000, orig. proceeding). *Troxel* also articulates a presumption that fit parents act in the best interest of their children. *Bates*, 81 S.W.3d at 436, *citing Troxel*, 530 U.S. at 68, 120 S.Ct. at 2061.

"Accordingly, so long as a parent adequately cares for his or her children ( i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69, 120 S.Ct. at 2061. The Supreme Court held in *Troxel* that a trial court's order for grandparent access unconstitutionally infringed on the parent's fundamental liberty interest where there was no evidence that the parent was unfit, that the children's health and well-being would suffer, or that the parent intended to exclude grandparent access entirely. *Troxel*, 530 U.S. at 68-75, 120 S.Ct. at 2060-65.

Section 102.004 of the Texas Family Code addresses standing of grandparents and other relatives to either file an original suit requesting managing conservatorship or to intervene in a pending suit. TEX.FAM.CODE ANN. § 102.004 (West 2014). It provides as follows:

> (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:
>
>   (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or
>
>   (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.
>
> (b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

As a general rule, an individual's standing to intervene is commensurate with that individual's standing to file an original lawsuit. *In re N.L.D.*, 412 S.W.3d 810, 815 (Tex.App.--

- 8 -

Texarkana 2013, no pet.); *Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex.App.--Houston [1st Dist.] 2007, no pet.). A party's standing to file an original suit affecting the parent-child relationship is governed by Sections 102.003 (general standing) and 102.004(a) (additional standing for grandparent/close relative) of the Texas Family Code. *In re N.L.D.*, 412 S.W.3d at 815. Section 102.004(b) of the Texas Family Code provides a relaxed standing rule through which an individual without standing to file an original suit for managing conservatorship may nonetheless intervene in a pending suit. *In re N.L.D.*, 412 S.W.3d at 815. Shumate was required to establish standing under Section 102.004(b) by a preponderance of the evidence. *In re R.D.Y.*, 51 S.W.3d 314, 325 (Tex.App.--Houston [1st Dist.] 2001, pet. denied)(when a party is statutorily required to establish standing with "satisfactory proof," the applicable evidentiary standard is by a preponderance of the evidence.).

Section 153.131 of the Family Code establishes a rebuttable presumption that appointment of a parent as the sole managing conservator or both parents as joint managing conservators is in the best interest of the child. *See* TEX.FAM.CODE ANN. § 153.131 (West 2014). This presumption may be overcome by evidence that the appointment "would significantly impair the child's physical health or emotional development". *Id.* Given the existence of this presumption, a non-parent will not satisfy her burden under Section 102.004(b) by offering evidence that she would be a better custodian of the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990)(construing Section 153.131 of the Family Code). The non-parent must offer evidence of specific acts or omissions of the parent that demonstrate that an award of custody to the parents would cause physical or emotional harm to the child. *See In re S.M.D.*, 329 S.W.3d 8, 16 (Tex.App.--San Antonio 2010, pet. dism'd); *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2007, no pet.). The evidence must support the

- 9 -

logical inference that some identifiable behavior or conduct of the parents will probably cause that harm, and the link between the parents' conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. *In re S.M.D.*, 329 S.W.3d at 16. The non-parent's burden is not met by evidence that shows she would be a better custodian of the child or that she has a strong and on-going relationship with the child. *Id.* "If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling." *In re S.M.D.*, 329 S.W.3d at 16, *quoting May v. May*, 829 S.W.2d 373, 377 (Tex.App.--Corpus Christi 1992, writ denied). If the intervenor fails to meet his burden, the trial court must dismiss the petition in intervention. *See In re M.T.C.*, 299 S.W.3d 474, 480 (Tex.App.--Texarkana 2009, no pet.).

*Entry of Orders Prior to Determining Standing*

The trial court entered four orders granting relief at the request of the intervenor Shumate: (1) an order for Domestic Relations Office services (entered on December 17, 2013); (2) a temporary restraining order prohibiting Relator and the child's father from harassing or threatening Shumate (entered on January 16, 2014); (3) an interim temporary order awarding Shumate standard visitation with the child (entered on January 16, 2014); and (4) an order extending the TRO to the next hearing date, April 21, 2014 (entered on January 31, 2014). Relator argues that the orders are void because the trial court did not first determine that Shumate had standing to intervene, and therefore, the court lacked subject matter jurisdiction. Thus, the issue presented by this mandamus petition is whether the trial court had jurisdiction to enter these orders without first determining that Shumate has standing to intervene in an existing SAPCR under Section 102.004(b) of the Texas Family Code.

Shumate argued in the trial court that she is not required to seek leave of court to intervene. Her position is contrary to the plain language of Section 102.004(b) which states that "*the court may grant* a grandparent or other person deemed by the court to have had substantial past contact with the child *leave to intervene* in a pending suit filed by a person authorized to do so under this subchapter . . . . " [Emphasis added]. TEX.FAM.CODE ANN. § 102.004(b). Consequently, the trial court did not have authority to grant relief in favor of Shumate, even on a temporary basis, without first determining that she has standing under Section 102.004(b) and granting her leave to intervene. For this reason alone, Relator is entitled to mandamus relief.

*Insufficient Evidence to Prove Standing*

To the extent the trial court's entry of the orders in question could be construed as an implicit determination that Shumate has standing, the evidence does not support such a ruling. Relator does not dispute that Shumate had "substantial past contact" with the child and Shumate did not offer any proof that the child's physical health has been significantly impaired. Consequently, the only issue is whether Shumate presented sufficient evidence to rebut the strong presumptions in favor of parental custody and fitness of the parents and to establish that appointment of Relator as sole managing conservator or both parents as joint managing conservators would significantly impair the child's emotional development.

Shumate generally claimed in her affidavit that Relator has a pattern of neglect towards the child. The only act or omission of Relator which might be construed as neglect is Shumate's assertion that Relator visited the child only sporadically on weekends during the last four years. Prior to 2009 when Relator began attending NMSU in Las Cruces, Relator and K.L. lived in Shumate's home. The child continued to live with Shumate while Relator attended NMSU from 2009 to 2012. Relator apparently continued to live in Las Cruces for a period of time after

graduation but she is currently living in El Paso. Shumate admitted during cross-examination that Relator regularly visited K.L. while she attended school and she missed weekend visits only occasionally when she had to remain in Las Cruces to complete a project for school. Even accepting Shumate's affidavit as true, she did not present any evidence that the child had suffered significant impairment of her emotional development because Relator had visited her only sporadically in the past.

Shumate maintained in her affidavit that Relator "has a pattern of jumping from one unstable home to another unstable home" and she testified that the child does not have a "sense of stability". Shumate also testified that K.L. was confused about the identity of her family because Relator had been involved with six different men since the child had been born. Shumate did not offer any evidence that K.L.'s confusion about her family or lack of a sense of stability had resulted or would result in significant impairment of her emotional development. Shumate asserted in her affidavit and at the hearing that the child had suffered emotional harm because Relator had not allowed her to have any contact with the child, but she admitted on cross-examination that Relator had permitted her to have contact with the child since April 2013. The DRO report reflects that the child was bonded to Shumate and became sad at the conclusion of the interview, but this finding, standing alone, does not establish significant impairment of the child's emotional development. Shumate failed to establish that she has standing to intervene. The trial court clearly abused its discretion by impliedly finding that Shumate has standing.

*Shumate Failed to Establish Relator is Unfit*

There is an additional reason for granting mandamus relief. The trial court effectively granted Shumate the relief she sought in her second amended petition in intervention by entering the interim temporary order which ordered that Shumate "shall have possession of and access to

the child . . . according to the Standard Possession Order." Shumate did not, however, satisfy the requirements of *Troxel*. Under *Troxel*, a non-parent must present evidence establishing that the parent is unfit, the children's health and well-being would suffer, and that the parent intended to exclude the non-parent's access entirely. *Troxel*, 530 U.S. at 68-75, 120 S.Ct. at 2060-65. Shumate did not offer any evidence that Relator is an unfit parent. Consequently, the trial court's interim temporary order unconstitutionally infringed on Relator's fundamental right to make decisions concerning the care, custody, and control of her child. *See Troxel*, 530 U.S. at 68-75, 120 S.Ct. at 2060-65.

*Adequate Remedy by Appeal*

Mandamus is available to review a trial court's temporary orders in a suit affecting the parent-child relationship. *See In re Herring*, 221 S.W.3d 729, 730 (Tex.App.--San Antonio 2007, orig. proceeding)("Because temporary orders in suits affecting the parent-child relationship are not appealable, a petition for a writ of mandamus is an appropriate means to challenge them."). Further, Relator does not have an adequate remedy by appeal from the trial court's orders which effectively permitted Shumate to intervene in the suit and which granted the relief sought by Shumate in her petition in intervention. *See In re Lewis*, 357 S.W.3d 396, 402-03 (Tex.App.--Fort Worth 2011, orig. proceeding)(holding mother lacked adequate remedy by appeal from trial court's order granting maternal grandparents' petition to intervene).

*Conclusion*

Relator has established that the trial court clearly abused its discretion by entering the four orders granting relief at the request of the intervenor, Shumate, without first determining that she had standing to intervene. Further, Relator does not have an adequate remedy by appeal. Accordingly, we conditionally grant the petition for writ of mandamus and order the trial court to

set aside the following orders entered in cause number 2013DCM4795: (1) an order for Domestic Relations Office services (entered on December 17, 2013); (2) a temporary restraining order prohibiting Relator and the child's father from harassing or threatening Shumate (entered on January 16, 2014); (3) an interim temporary order awarding Shumate standard visitation with the child (entered on January 16, 2014); and (4) an order extending the TRO to the next hearing date, April 21, 2014 (entered on January 31, 2014). The writ of mandamus will issue only if Respondent does not comply.

August 29, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.