

# Fourth Court of Appeals
## San Antonio, Texas

**DISSENTING OPINION**

No. 04-21-00534-CV

**IN THE INTEREST OF J.R.M.**

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00113
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice
Dissenting Opinion by: Liza A. Rodriguez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 6, 2022

This case was originally referred to the Department not because of any action or inaction by Mom, but because of an alleged incident of sexual misconduct by J.R.M. against another family member. Prior to the Department becoming involved, Mom had left J.R.M. in the care of her cousin in Texas while she sought to re-locate the family to Arizona. At trial, the caseworker acknowledged through her testimony that Mom, during her absence, had placed J.R.M. with an appropriate caregiver. According to the caseworker, before the Department's involvement, J.R.M. was healthy and going to school. The caseworker also testified that following the Department's investigation, no charges for neglect were brought against any of J.R.M.'s care providers with whom Mom had left J.R.M. Further, the caseworker agreed she had no concerns about Mom's mental health.

Therefore, the undisputed evidence shows that Mom was meeting J.R.M.'s best interest before J.R.M.'s removal.

There is "a strong presumption that the child's best interest is served by maintaining the parent-child relationship." *In re D.L.W.W.*, 617 S.W.3d 64, 81 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "Thus, we strictly scrutinize termination proceedings in favor of the parent." *Id*.; *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.). "And because of the strong presumption in favor of maintaining the parent-child relationship and the due process implications of terminating a parent's rights to her minor child without clear and convincing evidence, 'the best interest standard does not permit termination merely because a child might be better off living elsewhere.'" *In re D.W.L.L.*, 617 S.W.3d at 81 (quoting *In re J.G.S.*, 574 S.W.3d 101, 121-22 (Tex. App.—Houston [1st Dist.] 2019, pet. denied)) (internal quotations omitted). "Termination of parental rights should not be used as a mechanism to merely reallocate a child to better and more prosperous parents." *In re D.W.L.L.*, 617 S.W.3d at 81; *see also In re J.G.S.*, 574 S.W.3d at 121-22.

"Moreover, termination is not warranted 'without the most solid and substantial reasons.'" *In re D.W.L.L.*, 617 S.W.3d at 81 (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)) (internal quotations omitted). In parental-termination proceedings, the Department's "burden is not simply to prove that a parent should not have custody of her child; [it] must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any relationship with her child whatsoever." *Id*; *see In re K.N.J.*, 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.). Based on this record, the sparse evidence presented by the Department was conclusory and therefore no evidence at all. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) (explaining that conclusory "best interest" testimony such as a caseworker's testimony that a child would be better off with a new family, even if uncontradicted,

does not amount to more than a scintilla of evidence and does not meet the clear and convincing standard). Other than the caseworker, no other witnesses were called by the Department, nor were any exhibits admitted during the forty-five-minute-long trial.

With regard to the finality of placement, the caseworker averred that the placement at the time of trial, as well as the initial placement where J.R.M. was left in the care of Mom's maternal cousin, were both meeting J.R.M.'s needs. According to the caseworker's testimony, the current placement was not interested in becoming "licensed," which the caseworker agreed was ultimately necessary for adoption. When asked about J.R.M.'s relationship with Mom, the caseworker stated that J.R.M. was "somewhat shy" and "wasn't interested in speaking about [Mom]," speculating that "maybe it's because they don't have a bond." The record does not indicate whether the caseworker ever witnessed any interaction between Mom and J.R.M. and presents no evidence to support her conclusion that J.R.M. did not have a bond with Mom. The caseworker did agree that Mom communicated with J.R.M. virtually during the time she had been away, including contacting the placement every couple of weeks.

The caseworker also stated in a conclusory fashion that J.R.M. was "very happy with his placement," but did not testify about whether any bond existed between J.R.M. and the placement, nor did she testify about any changes in particular emotional or physical needs of J.R.M. from the time before removal to the time after the Department became involved. The caseworker agreed generally that the placement would be able to meet J.R.M.'s emotional and physical needs now and in the future and that there were no medical or other concerns with the placement but did not elaborate on how she came to that conclusion. Likewise, other than to say he was aligned with the Department's position in seeking to terminate Mom's parental rights, no rationale was given by the ad litem as to why he believed it was in J.R.M.'s best interest.

With regard to the emotional and physical danger to the child now and in the future, Mom admitted during her testimony to having been arrested for a criminal offense. However, it was undisputed that she was out on bond and that the charges for which she was arrested were still pending. Further, there was no evidence that J.R.M. was endangered by Mom's arrest for alleged criminal activity. The caseworker testified that Mom had a "past history of drug use;" however, according to her testimony, she based this belief on statements Mom made during her psychological evaluation. The record does not reflect the type of drug or time frame involved in Mom's drug use, nor was she asked during her testimony. The caseworker also testified that in the past Mom had J.R.M. "around people that have had criminal history against children and in unsafe environments." However, when asked to specify the person to whom she was referring, she responded "it was a male adult." She could not recall the person's name. The caseworker also stated that no charges were brought against this person for allegedly assaulting J.R.M.

Because the long-term effects on a child whose relationship is forever and irrevocably severed from their parent are at stake, I urge the trial court and the parties to more completely develop the trial evidence in the future so that the depth of the appellate record is commensurate with the finality and gravity of parental termination. *See In re E.F.*, 591 S.W.3d 138, 142 n.4 (Tex. App.—San Antonio 2019, no pet.) ("Given the constitutional rights of the parents in these proceedings, the future placement of the children involved, and the effect such placement will have on their lives, however, we urge the trial court and the parties to more completely develop the evidence at trial, so the appellate record is commensurate with the finality of parental termination.").

In reviewing the record, I conclude that there is insufficient evidence to support the trial court's best-interest finding in this case. As noted, the undisputed evidence shows that Mom was meeting J.R.M.'s best interest. The testimony presented at trial by the Department, and relied upon

by the trial court, is conclusory and thus cannot be considered evidence. Therefore, I would reverse the portion of the trial court's judgment that terminated mom's parental rights. For these reasons, I respectfully dissent.

Liza A. Rodriguez, Justice