**Opinion issued September 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00451-CV

_____

## IN THE INTEREST OF M.S., A CHILD

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2014-02671J

---

## MEMORANDUM OPINION

B.L.D., the mother, appeals from the trial court's decree terminating her parental rights to her daughter, M.S. She contends that the evidence was neither legally nor factually sufficient to support the trial court's findings that: (1) she failed to comply with the court order setting forth the family service plan

requirements, and (2) termination of her parental rights is in M.S.'s best interest. We affirm.

## Background

In May 2012, when M.S.'s mother was nearly four months pregnant with M.S., she was charged with theft of property of the value of more than $50 and under $500, a class B misdemeanor. She pleaded guilty to the charge and was sentenced to serve 15 days in the Harris County Jail.[1]

In July 2012, when she was about six months pregnant, M.S.'s mother was arrested for possession of less than two ounces of marijuana, a Class B misdemeanor, and held in the county jail. Thirty-five days later, she pleaded guilty and was sentenced to time served. At trial, the mother denied using marijuana.

The mother gave birth to M.S. in the fall of 2012. When M.S. was approximately six months old, the mother was charged with the offense of theft of property valued less than $1,500, third offense, which is classified as a state jail felony. In August 2013, the mother pleaded guilty to the charge, and received deferred adjudication and two years' community supervision.

When M.S. was about 18 months old, she came into the custody of the Department of Family and Protective Services after being found in the car when her mother was arrested in Orange County for suspicion of driving while

---

[1] We take judicial notice of the Harris County District Clerk's records in that case. *See* TEX. R. EVID. 201(b)(2).

2

intoxicated. The mother failed the field sobriety test and admitted to having taken 3 alprazolam pills before driving. The mother submitted to a blood draw, which tested negative for alcohol but positive for prescription medications. The mother explained at trial that she took various medications for anxiety and seizure disorders. She admitted that her prescription medications made her feel "loopy" or groggy, but denied being under the influence of the medications while she was driving. At the time of the termination trial, the DWI charge remained pending in Orange County.

The court named Child Protective Services (CPS) as the child's temporary managing conservator, and CPS initially placed the child with her maternal aunt. The CPS caseworker reviewed the family service plan with the parents, and both parents signed the plan. M.S.'s father died while this case was pending in the trial court.

The family service plan required the mother to complete a drug and alcohol assessment; submit to random drug screens; refrain from criminal activity; comply with all stipulations of probation or parole, if any; participate in individual counseling/therapy sessions concerning issues that led to M.S.'s removal; and attend and successfully complete an approved parenting class. The plan also required the mother to obtain and maintain permanent and appropriate housing that would provide a safe and protective environment for M.S.

In March 2014, the mother was convicted of driving with a suspended license, a Class B misdemeanor and a violation of the terms of her community supervision. She served four days in jail in lieu of paying a fine.

Hair and urine samples were collected from the mother in June 2014. Both samples tested positive for methamphetamine, marijuana, and alprazolam metabolites.[2] The mother denied having used either cocaine or methamphetamine; she claimed that she had only used ecstasy. Since then, samples taken from the mother in August 2014, October 2014, November 2014, January 2015, and March 2015 all tested negative for unprescribed or street drugs.

On October 30, 2014, the trial court approved the child's placement with her paternal grandmother. The mother's counsel stated that she had no objection to change of placement.

In February 2015, the trial court sent notice that trial would take place starting April 9 and that the date for dismissal of the cause was April 20, 2015. Also in February, the mother violated her community service conditions by leaving Harris County to attend a hearing in her DWI case without obtaining permission from her probation officer. She spent a month in jail as a result.

---

[2]     During the two-year period beginning on November 28, 2013, the mother was also required to submit to random drug and alcohol testing as a condition of her community supervision.

At trial, M.S. was two years old and living with her grandmother. A CPS caseworker reported that M.S. was doing well in the home. She had bonded with her grandmother.

The evidence showed that the mother is disabled because of anxiety and seizure disorders. She receives disability income and food stamps for her support. The mother admitted that she lacked stable housing during the past year. She explained that it was difficult to find an apartment because of her criminal background.

With respect to the mother' compliance with the family service plan, the CPS caseworker testified that the mother had completed parenting classes and the required evaluations. The mother also began substance abuse counseling in September 2014. The mother received a certificate of completion for drug abuse counseling, but she had cancelled or missed a number of individual counseling sessions. The caseworker explained that because of the mother's delay in completing the program, she had not yet complied with her drug abuse counselor's recommendation that she attend an additional nine monthly aftercare sessions.

The caseworker further testified that the mother did not regularly visit M.S. The family service plan anticipated that the mother would have supervised visitation with M.S. every other week. The mother, however, had only eight visits with M.S. during the year the case was pending. The mother admitted that she

5

could not visit during the month she was in jail. The grandmother testified that the mother cancelled visitation "a lot." She explained that the mother would arrange for the grandmother to bring M.S. to meet her mother at a Chuck E. Cheese's restaurant, but the mother then failed to appear at the scheduled time. The grandmother recounted that the last time the mother had visited with M.S., the mother appeared to be drunk and behaved and was dressed inappropriately. The mother harassed the Chuck E. Cheese's staff and became so disruptive that the restaurant staff asked her to leave. The grandmother testified that she believed it would be in M.S.'s best interest for M.S. to remain with her.

The trial court signed an order terminating the mother's parental rights. The order contains the following findings:

> The Court finds by clear and convincing evidence that termination of the parent-child relationship between [the mother] and the child, M.S., the subject of this suit is in the child's best interest.
>
> Further, the Court finds by clear and convincing evidence that [the mother] has:
>
> - engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(E), Texas Family Code;
>
> - constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services . . . for not less than six months and: (1) the Department . . . has made reasonable efforts to return

the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(1)(N), Texas Family Code;

- failed to comply with the provisions of a court order that specifically established actions necessary for the mother to obtain the return of the child who has been in the . . . temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code.

The mother moved for new trial, complaining that she was entitled to additional time to complete the family service plan. The trial court denied the motion.

## Discussion

The mother challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that (1) she failed to comply with the family service plan and (2) termination of her parental rights is in the best interest of the child.

## A.     Standard of Review

A parent's right to the care, custody, and control of his child is a liberty interest protected under the Constitution, and we strictly scrutinize termination proceedings on appeal. *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct.

1388, 1397 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support an involuntary termination. *Holick*, 685 S.W.2d at 20 (citing *Santosky*, 455 U.S. at 747, 102 S. Ct. at 1391). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

When determining legal sufficiency in a parental-rights termination case, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of the judgment if a reasonable factfinder could have done so. *Id.* We disregard "evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true after conducting its legal-sufficiency review, the court must conclude that the evidence is legally insufficient. *Id.*

In determining factual sufficiency, we consider the entire record, including disputed evidence, to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" about the truth of the allegation

sought to be established. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

"The involuntary-termination statute sets out twenty different courses of parental conduct, any one of which may serve as a ground that satisfies the statute's first prerequisite for termination." *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014) (citing TEX. FAM. CODE ANN. § 161.001(A)–(T)). To prevail in a termination case, the Department must establish that one or more of the enumerated grounds occurred.

## II. Sufficiency of Predicate Termination Findings

The mother's brief challenges only the sufficiency of the evidence to support termination of her parental rights under section 161.001(1)(O), relating to compliance with the family service plan. She does not challenge the trial court's findings relating to endangerment and abandonment. Because her argument that the trial court did not give her sufficient time to complete the plan may implicate the other predicate findings, we address this contention.

The mother contends that "[t]he target date on the [front of the] family service plan"—April 16, 2015—is the actual deadline for her completion of the

9

plan, and that the trial court deprived her of additional time to complete the plan by proceeding with trial on April 9.

The family service plan document does not support her position. It identifies April 16, 2015 as the "target date" for the "permanency goal," and refers the reader to the last page for definitions. The definition of "permanency goal" concerns "where the child will live when DFPS services are done." "Permanency goal" thus refers not to the parent's progress in completing the family service plan, but to the Department's responsibility to identify a safe, permanent living situation for the child.

Also working against the mother's contention, the Family Code allows a court to terminate a parent's rights to her child if the child has been in the State's custody for at least nine months and the State proves, by clear and convincing evidence, that the parent failed to comply with a court order that specified what she had to do to get her child back. TEX. FAM. CODE ANN. § 161.001(1)(O). M.S. had been in the Department's care for more than nine months before the trial began. Under the plain language of the statute, then, the trial court had the authority to try the case when it did.

We need not review the merits of the mother's remaining evidentiary-sufficiency challenge to the trial court's service plan finding because the mother's brief failed to challenge the two other statutory grounds for termination that the

10

trial court identified as support for the termination decision. The Department in this case pleaded three of the statutory grounds, and the trial court found that all three grounds supported termination of the mother's parental rights. "Clear and convincing proof of any one ground will support a judgment terminating parental rights, if similar proof also exists that termination is in the child's best interest." *In re S.M.R.*, 434 S.W.3d at 580 (citing *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013)); *see* TEX. FAM. CODE ANN. § 161.001; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that court need not address appellant's sufficiency challenge to one section 161.001(1) finding in support of termination, because appellant failed to challenge sufficiency of evidence supporting findings on three other section 161.001(1) grounds); *accord In re B.M.*, No. 14-13-00599-CV, 2013 WL 6506659, at *5 (Tex. App.—Houston [14th Dist.] Dec. 10, 2013, no pet.); *In re N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.); *see also In re K.L.G.*, No. 14-09-00403-CV, 2009 WL 3295018, at *2 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (observing that appellate court is bound by unchallenged predicate findings). As two of the trial court's findings supporting termination are not challenged on appeal, we hold that the trial court did not err in concluding that grounds for termination exist.

## III. Sufficiency of Best-Interest Finding

Next, the mother challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in M.S.'s best interest. Unchallenged predicate findings can support a finding that termination of a parent's rights is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28 (holding that same evidence may be probative of both section 161.001(1) predicate grounds and best interest); *see also In re E.C.R.*, 402 S.W.3d at 249 ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."). In reviewing the evidence, we also consider the factors originally set forth in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), which include (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.* at 371–72.

M.S. is too young to express her own wishes, but the evidence shows that M.S. is doing well in her grandmother's home and has bonded with her

grandmother. The grandmother testified that she desires to adopt M.S. This evidence shows that the grandmother's home is a stable place for M.S. where her emotional and physical needs are being met.

The mother's behavior during her last visit with M.S. and the grandmother's testimony that the mother appeared to be impaired during that visit suggest that the substance abuse problem that precipitated M.S.'s removal could recur. The mother's inability to obtain safe and appropriate housing and her frequent encounters with law enforcement also support a finding that termination is in M.S.'s best interest. The record shows that the mother violated the terms of her community supervision at least twice, which places her at risk of having it revoked and returning to jail. The mother served a month in jail for one violation shortly before trial. Her unexcused absences from substance abuse counseling delayed her completion of the program and caused her counselor to recommend additional therapy sessions.

The mother has also cancelled numerous appointments with M.S. and her grandmother, and sometimes she failed to appear for scheduled visits without cancelling them. She cited transportation problems as the excuse for her lack of dependability; the trial court, however, could have determined that this reason was not credible. The mother made fewer than half of the visits with M.S. contemplated in the family service plan. Given that the mother frequently did not

appear for a visit with her daughter, the trial court reasonably could have concluded that the mother was not in a position to care for M.S.

Considering all of this evidence in a neutral light, we hold that the evidence is such that the trial court could have formed a firm conviction or belief that termination of the mother's parental rights was in M.S.'s best interest.

## Conclusion

We affirm the trial court's judgment.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.