**Opinion issued November 17, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00556-CV

————————————

## IN THE INTEREST OF S.R.-M.C.

On Appeal from the 313th District Court
Harris County, Texas
Trial Court Case No. 2010-08247J

## MEMORANDUM OPINION

In this accelerated appeal, appellant RAC, Sr. ("RAC") challenges the trial court's decree terminating his parental rights to his minor child, SR-MC. In two issues, RAC argues that the evidence was legally and factually insufficient to support (1) the termination of his rights under Texas Family Code section 161.001(1)(N), and (2) the finding that termination of RAC's parental rights was in

the best interest of the child under Texas Family Code section 161.001(2). *See* TEX.
FAM. CODE ANN. § 161.001(1), (2) (West 2014). We affirm.

## BACKGROUND

In June 2012, the Department of Family and Protective Services ["the Department"] was named the sole managing conservator of four-year-old SR-MC and her 17-year-old sister EW. The decree removed the girls' mother as managing conservator and limited her rights as possessory conservator. Appellant, RAC, was named as the alleged father of SR-MC, but his paternity had not yet been established.

In October 2013, a Family Service Plan was entered for RAC. The plan required RAC, among other things, to (1) "maintain a positive support system that is safe, crime-free, drug/alcohol free, and will not inflict abuse or neglect on his children, (2) "attend, actively participate in, and successfully complete parenting classes that last at least 4-6 weeks in length[,]" (3) "submit to a DNA test upon request[,]" (4) provide his current caseworker with any and all sources of income for himself and his children by the 15th of each month[,]" and "maintain stable employment for at least 5 months[,] (5) "participate in and give[] truthful information in all PPT/PC meetings, court hearings, and other planning sessions regarding his children[,]" and (5) "maintain stable and safe housing for a minimum of six months consecutively[.]"

2

RAC did submit to DNA testing, and, on September 12, 2014, he was formally adjudicated as SR-MC's father.

At trial, the Department's caseworker, Jamelle Gibbs, testified about RAC's involvement with the child as follows:

> [Department's counsel]: Okay. Now, I want to focus on respondent father, [RAC]. Do you know where [RAC] is currently living?
>
> [Gibbs]: I do.
>
> [Department's counsel]: Where is that?
>
> [Gibbs]: He lives in Indianapolis, [Indiana].
>
> [Department's counsel]: Okay. And did the Agency create a new Family Plan of Service for Mr. Cannon as well?
>
> [Gibbs]: Yes.
>
> [Department's counsel]: And what efforts did the Agency make to get the Family Plan of Service to [RAC]?
>
> [Gibbs]: I mailed it to [RAC] and I also went over it with him on the telephone.
>
> [Department's counsel]: And based on that conversation, did he understand the services that he was being requested to do?
>
> [Gibbs]: Yes.
>
> [Department's counsel]: Okay. As of today, what services has [RAC] completed?
>
> [Gibbs]: He gave a DNA sample.
>
> . . . .

[Department's counsel]: And do you believe that he has successfully completed the Family Plan of Service that was ordered in 2013.

[Gibbs]: He has not.

[Department's counsel]: Okay. While this case has been pending, has [RAC] ever visited with [SR-MC]?

[Gibbs]: He has not.

[Department's counsel]: Has he ever reached out to the Agency to set up visitation?

[Gibbs]: No.

[Department's counsel]: Has he reached out to the Agency to try to have phone contact with her?

[Gibbs]: No.

[Department's counsel]: Has he ever financially provided for [SR-MC]?

[Gibbs]: No.

[Department's counsel]: Has [RAC] ever sent her any letters, gifts, support of any kind, clothes?

[Gibbs]: No.

[Department's counsel]: Do you believe that he has abandoned her?

[Gibbs]: I do.

[Department's counsel]: And have you ever had discussions with [RAC] regarding whether he wanted to, in fact, parent his child?

. . . .

4

[Gibbs]: He stated that he was not able to parent his child. He wasn't stable. He had a job, but he wasn't working much and he wasn't being paid much and that, if possible, maybe one of his sisters could get [SR-MC].

[Department's counsel]: . . . . Do you have any evidence that [RAC] is currently employed?

[Gibbs]: No.

[Department's counsel]: So, do you have any evidence that he can financially support his child at this time?

[Gibbs]: I do not.

[Department's counsel]: Do you have any evidence that he has a safe and stable home?

[Gibbs]: I do not.

Gibbs further testified that the Department did not pursue placing [SR-MC] with [RAC's] sisters because one "failed her FBI background check" and the other was "noncompliant." Gibbs felt that [RAC] had abandoned [SR-MC] because "[i]t's been four years and he has shown absolutely no interest in her at all, whatsoever." Gibbs testified that, although the child was currently in a foster home, adoption was not a possibility; if the court terminated the parents' rights, "it [would] open the pool to where she can actually be broadcast and obtain permanency." It was Gibbs' opinion that "it is in [SR-MC's] best interest for the Agency to be able to reach out to the entire United States to find an adoptive placement for her."

5

At the end of the trial, the trial court stated that "Father's parental rights are terminated pursuant to Texas Family Code Section 161.001(N) and (O)." The trial court subsequently entered a written order, which found the following grounds for termination of RAC's parental rights:

[RAC] constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than six months and: (1) the Department ... has made reasonable efforts to return the child to [him]; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(1)(N), Texas Family Code;

[RAC] failed to comply with the provisions of a court order that specifically established the actions necessary for [him] to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code[.]

The trial court also found the Department had proved by clear and convincing evidence that termination of RAC's parental rights was in the child's best interest. This appeal followed.

## SUFFICIENCY OF EVIDENCE TO SUPPORT TERMINATION OF PARENTAL RIGHTS

In two issues on appeal, RAC contends that the evidence was legally and factually insufficient to support (1) the termination of his rights under Texas Family Code section 161.001(1)(N); and (2) the finding that termination of RAC's

6

parental rights was in the best interest of the child under Texas Family Code section 161.001(2).

## A. Standard of Review

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In a legal sufficiency review in a parental-rights-termination case, the appellate court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable

7

factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In a factual sufficiency review, the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). By focusing on whether a reasonable factfinder could form a firm conviction or belief, the appellate court maintains the required deference for the factfinder's role. *Id.* at 26. "An appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *Id.* We should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## B. Sufficiency of Predicate Findings

In his first issue on appeal, RAC's brief challenges only the sufficiency of the evidence to support termination of his parental rights under section 161.001(1)(N), relating to termination for constructive abandonment of the child. He does not challenge the trial court's findings relating to compliance with the family service plan under section 161.001(1)(O).

Because RAC did not challenge both statutory predicate grounds for termination, we need not review the merits of his evidentiary-sufficiency challenge to the abandonment finding. The Department in this case pleaded two of the statutory grounds, and the trial court found that both grounds supported termination of the RAC's parental rights. "Clear and convincing proof of any one ground will support a judgment terminating parental rights, if similar proof also exists that termination is in the child's best interest." *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014) (citing *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013)); *see* TEX. FAM. CODE ANN. § 161.001; *In re A.V.*, 113 S.W.3d at 362; *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102–03 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that court need not address appellant's sufficiency challenge to one section 161.001(1) finding in support of termination, because appellant failed to challenge sufficiency of evidence supporting findings on three other section 161.001(1) grounds); *accord In re B.M.*, No. 14-13-00599-CV, 2013

WL 6506659, at *5 (Tex. App.—Houston [14th Dist.] Dec. 10, 2013, no pet.) (mem. op.); *In re N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.); *see also In re K.L.G.*, No. 14-09-00403-CV, 2009 WL 3295018, at *2 (Tex. App.—Houston [14th Dist.] Oct. 15, 2009, no pet.) (mem. op.) (observing that appellate court is bound by unchallenged predicate findings). Because one of the trial court's findings supporting termination is not challenged on appeal, we hold that the trial court did not err in concluding that grounds for termination exist. *See In re M.S.*, No. 01-15-00451-CV, 2015 WL 5769993, at *4 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.) (declining to address sufficiency of predicate finding when all predicate findings not challenged on appeal).

We overrule RAC's first issue on appeal.

## C. Best Interest of the Child

In his second issue, RAC argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the SR-MC's best interest.

### 1. Applicable Law

A strong presumption exists that a child's best interest is served by maintaining the parent-child relationship. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). In *Holley v. Adams*, 544 S.W.2d 367

10

(Tex. 1976), the Texas Supreme Court provided a nonexclusive list of factors that the factfinder in a termination case may use in determining the best interest of the child. *Id.* at 371–72. These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and the Department need not prove all factors as a condition precedent to parental termination. *In re C.H.*, 89 S.W.3d at 27; *Adams v. Tex. Dep't of Family & Protective Servs.*, 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28.

### 2. Analysis

Here, there was no evidence about the wants or desires of SR-MC. Appellant himself admitted that he could not meet the needs of the child now, and

11

he provided no evidence that he would be able to do so in the future. He also admitted to Gibbs that he was unable to parent SR-MC because "he wasn't stable," and "wasn't working much." Although he suggested two of his sisters as possible placements for SR-MC, one of them did not pass her FBI background check and the other was "noncompliant." Although appellant claims to be the "non-offending parent," during all of the time that the child had been in the Department's custody, he had taken no steps to contact her, and he had never provided any support, either financially or emotionally. And, even though he was given a family service plan, appellant made no efforts to complete it other than taking a DNA test. This evidence supports the court's best interest finding. *See In re C.H.*, 89 S.W.3d at 27–28; *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (stating that evidence supporting finding under subsection O would also support the best interest finding). Although appellant's brief speculates that he may not have known how to contact the child, there is no evidence in the record to support that assertion. Finally, the caseworker testified that the termination of appellant's parental rights would be in the child's best interest because then the Department could look nationwide for a permanent adoptive family.

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of RAC's parental rights was in SR-MC's best interest. *See* TEX. FAM.

CODE ANN. § 161.001(2); *J.F.C.*, 96 S.W.3d at 265–66. Viewing the same evidence in a neutral light, the disputed evidence is not so significant as to prevent a factfinder from forming a firm belief or conviction that termination of RAC's parental rights was in SR-MC's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *J.F.C.*, 96 S.W.3d at 265–66. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of RAC's parental rights was in SR-MC's best interest.

We overrule point of error two.

## CONCLUSION

We affirm the trial court's order terminating RAC's parental rights.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.