In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00011-CV**
_____

**IN THE INTEREST OF R.M.S. III**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 14-09-10137-CV**

**MEMORANDUM OPINION**

The mother of the minor child R.M.S. III ("Mother") appeals from a judgment terminating her parental rights. In three issues, Mother argues that (1) the trial court erred in terminating her parental rights under section 161.001(b)(1)(N); (2) the trial court erred in terminating her parental rights under section 161.001(b)(1)(P); and (3) the evidence was factually insufficient to support the trial court's finding that termination was in the best interest of R.M.S. III. *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(N), (P), (2) (West Supp. 2018). We affirm the trial court's judgment.

BACKGROUND

In December 2017, the Texas Department of Family and Protective Services ("the Department") filed an original petition seeking the protection and removal of R.M.S. III and the termination of Mother's parental rights. The record shows that the Department removed R.M.S. III due to allegations of drug use and neglectful supervision and that on the day of removal Mother tested positive for methamphetamines. The Department's petition alleged Mother had committed seven statutory grounds that supported termination and that termination was in the best interest of R.M.S. III. The trial court appointed the Department as R.M.S. III's temporary managing conservator.

In November 2018, the trial court conducted a bench trial and terminated Mother's parental rights, finding clear and convincing evidence supported five statutory grounds for termination. *See* Tex. Fam. Code. Ann. § 161.001(b)(1)(D), (E), (N), (O), (P) (West Supp. 2018). The trial court also found that termination of Mother's parental rights was in the best interest of R.M.S. III. *See id.* § 161.001(b)(2). Mother appealed.

ANALYSIS

In issues one and two, Mother challenges two of the independent grounds that the trial court found supported terminating her parental rights. In addition to a

finding that termination is in the child's best interest, only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination. *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see* Tex. Fam. Code. Ann. § 161.001 (West Supp. 2018). An appellant must challenge all independent grounds that fully support a judgment. *In the Interest of S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied). By failing to raise an appellate challenge to the trial court's findings under section 161.001(b)(1)(D), (E), and (O), Mother failed to challenge all of the independent grounds listed in the termination order. Accordingly, we need not review Mother's challenges to the sufficiency of the evidence supporting the trial court's findings under subsections (N) and (P), because this court must accept the unchallenged findings as true and affirm the trial court's findings under subsections (D), (E), and (O). *See id.* at 682-83; *In the Interest of N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.). We overrule issues one and two.

In issue three, Mother challenges the factual sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in the best interest of R.M.S. III. With three grounds of termination being unchallenged, we must affirm the termination if it is in the best interest of R.M.S. III. *See In the Interest of N.L.D.*, 412 S.W.3d at 818.

3

Regarding the child's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West Supp. 2018). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *See In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

In regard to the *Holley* factors, Mother contends that she had lived with R.M.S. III for most of his life, her visits with R.M.S. III were appropriate, and she and R.M.S. III were well bonded. Mother argues that because R.M.S. III's paternal

4

grandparents have always provided stability and would continue to do so, evidence of Mother's lack of stability and living arrangements, inability to finish her service plan, and her parenting skills is factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of R.M.S. III. With respect to the best interest finding, the trial court heard testimony from Tevana Holder, an investigator with the Department, who testified that she investigated the original allegation of abuse and neglect of R.M.S. III, which was based on Mother's suspected drug use while caring for the child.

According to Holder, the factual allegations included that Mother had sores on her face, Mother's attitude was up and down, and Mother was having outbursts of anger. Holder testified that when she met with Mother, she had no concerns based on R.M.S. III's appearance, but Mother appeared to be under the influence and was emotional and unable to focus. Holder explained that when they first talked, Mother told Holder that she would not pass a drug test because she was taking Adderall and had smoked marijuana, and later Mother admitted to using methamphetamine a couple of times per week. Holder testified that Mother tested positive for methamphetamine and did not have a stable residence, and R.M.S. III was removed and placed with a relative. According to Holder, prior to removal, Mother took care

5

of the child during the week and the paternal grandparents took care of the child on the weekends.

Victoria Warmuth, the Department caseworker assigned to R.M.S. III's case, testified that in the beginning of the case, Mother cooperated with the Department and worked toward completing her service plan. However, according to Warmuth, Mother failed to complete the court-ordered services, and Mother was very emotional and at times was aggressive and angry. Warmuth testified that she is concerned about Mother living with a boyfriend who has assaulted both Mother and R.M.S. III. According to Warmuth, Mother has failed to maintain stable housing and employment and failed to demonstrate the ability to provide a safe environment for R.M.S. III. Warmuth explained that R.M.S. III is doing well in his placement and is fearful of returning to his Mother's care. Warmuth testified that terminating Mother's parental rights is in the best interest of R.M.S. III.

Jenny Stadler, a clinical psychologist, testified that due to the Department's concerns regarding Mother's parenting competency, she conducted a psychological evaluation of Mother. Stadler testified that Mother admitted that she had recently used marijuana and reported using other drugs, including methamphetamine. Stadler testified that Mother felt that she was unstable but wanted to finish her services, so she could have input concerning R.M.S. III's upbringing. Stadler recommended that

Mother go to inpatient substance abuse treatment and individual therapy, and if Mother was compliant, Stadler recommended that Mother undergo a psychiatric evaluation to consider whether Mother's ADHD should be treated with medication. Stadler explained that she recommended inpatient treatment because Mother had continued to use drugs despite knowing that there were significant consequences for doing so. Stadler concluded that generally, Mother should be able to function in a supervised visit.

Victor Love, a licensed marriage and family therapist and chemical dependency counselor, testified that Mother was referred to him by the Department, and Mother attended twenty-one individual therapy sessions and one family therapy session with R.M.S. III's paternal grandparents. Love explained that he had attempted to schedule Mother for weekly sessions, but Mother had failed to show fourteen times and had cancelled once. Love testified that Mother did not successfully complete therapy, and Love explained that after his last visit with Mother, she failed to respond to his attempts to schedule more sessions. According to Love, Mother did not appear to want therapy, and Mother was more focused on complaining about other people rather than making changes within herself. Love explained that Mother's therapeutic goals were to obtain sobriety and stability and to improve her relationship with R.M.S. III's father and paternal grandparents.

7

Love testified that Mother did not want to make all these changes, because Mother did not think that she needed to change and did not want anyone telling her what to do. According to Love, Mother's behaviors would put her child at risk, because Mother continued to do things that would put her at risk of being arrested. Mother continued to be in unstable relationships that exposed her to domestic violence, and she was in and out of homelessness. Love testified that throughout the therapy sessions, Mother admitted to using marijuana and alcohol. Love also explained that Mother was not compliant in continuing with family therapy with the paternal grandparents. Love described Mother's behavior during treatment as belligerent, defiant, and combative, and Love testified that Mother's behavior was a hindrance to her making the necessary changes to provide a safe and stable environment for R.M.S. III. According to Love, supervised visits would be acceptable, but only if Mother could demonstrate that she was sober, consistent, and reliable. Love explained that Mother indicated that she was no longer willing to submit to drug screens to continue to have visitation with R.M.S. III.

Katie Waller, a licensed chemical dependency counselor, testified that she conducted a drug and alcohol assessment of Mother, and Waller recommended Mother for individualized substance abuse treatment. Waller testified that Mother did not complete the eight-week program, and Mother was discharged for non-

compliance. Waller testified that she suspected Mother was still using drugs and that her suspicion was based on Mother's comments and behavior. According to Waller, she did not hear from Mother after Mother tested positive on a drug test. Nancy Villareal, a drug and alcohol counselor and parenting teacher, testified that Mother failed to complete an eleven-week parenting course. Villareal explained that she gave Mother a second opportunity to complete the course, but Mother failed to do so.

R.M.S. III's paternal grandmother, K.S., testified that R.M.S. III has mostly lived in her home since he was born, and that Mother left when R.M.S. III was approximately three months old. According to K.S., the police allowed R.M.S. III to stay at their house, because Mother was drunk when she returned to get R.M.S. III. K.S. explained that after Mother received custody of R.M.S. III, Mother stayed off and on at K.S.'s house and at numerous other places, and sometimes Mother left R.M.S. III with K.S. K.S. testified that at one point, when Mother lived with her for approximately eight months, K.S. primarily took care of R.M.S. III, and K.S. helped Mother enroll in college and get a vehicle. K.S. described her relationship with Mother as being up and down due to Mother's erratic behavior. K.S. testified that Mother had left R.M.S. III with K.S., because Mother wanted to be with boyfriends who did not want a child.

K.S. explained that R.M.S. III was doing extremely well in her home, and he does not ask about Mother. According to K.S., Mother has not shown up regularly for her visits with R.M.S. III. K.S. testified that R.M.S. III has anxiety leading up to Mother's visits, and on one occasion, R.M.S. III started to stutter because he was afraid that Mother was going to take him. K.S. explained that she and her husband wanted to provide R.M.S. III with a permanent home, and K.S. testified that it was in R.M.S. III's best interest not to visit with Mother.

Mother testified that for the past five months she has lived off and on with a boyfriend whom she had previously reported for domestic violence, and other times she stayed with friends. Mother explained that if R.M.S. III was returned to her she had two friends with whom she could live. Mother testified that she had been working at her current job for about a month, and if R.M.S. III was returned, she would have to rely on her boyfriend, who has been abusive, to transport her to work and R.M.S. III to daycare. Mother explained that she lived with R.M.S. III's paternal grandparents during her pregnancy and until R.M.S. III was four weeks old, and when Mother moved out, the paternal grandparents would not let her take R.M.S. III.  Mother testified that she got R.M.S. III back when he was about eight weeks old. Mother explained that she was supporting herself with government benefits and

living with a boyfriend and different friends. According to Mother, R.M.S. III was three years old when the Department became involved.

Mother testified that she used methamphetamine when R.M.S. III was with his grandparents. Mother testified that she had last used marijuana two weeks before trial, and it had been approximately six months since she had used methamphetamine. According to Mother, she had not been drug tested by the Department in approximately six months. During the trial, Mother tested positive for marijuana. Mother testified that she knew the requirements of her service plan, including court ordered drug testing, and she agreed that she had not completed them. Mother testified the she had options for a stable residence if her son were returned. According to Mother, she would like to share custody with R.M.S. III's paternal grandparents, but Mother agreed she has had a difficult relationship with the grandparents.

The trial court heard testimony that R.M.S. III had been doing well in his current placement with his paternal grandparents. Kate Collins, a representative of the Court Appointed Special Advocates Group (CASA) and R.M.S. III's appointed guardian ad litem, testified that R.M.S. III had been living with his paternal grandparents for approximately six months and was happy and well settled. Collins testified that CASA recommended that R.M.S. III be adopted by his paternal

11

grandparents and that Mother's parental rights be terminated. According to Collins, termination would give R.M.S. III stability and a permanent placement in a stable environment. Collins explained that she did not support a monitored return because the child's stability should be the main concern, and based on Mother's conduct over the past year, Collins did not believe that it was probable that Mother could change her lifestyle to sufficiently care for R.M.S. III.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2018). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of Mother's parental rights was in the best interest of R.M.S. III. *See id.* §§ 161.001(b)(2), 263.307(a); *see also Holley*, 544 S.W.2d at 371-72. We conclude that the Department established, by clear and convincing evidence, that termination of Mother's parental rights is in the best interest of R.M.S. III. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In the Interest of A.V.*, 113 S.W.3d at 362. We overrule issue three. Having already affirmed the trial court's findings that Mother committed the predicate grounds under subsections (D), (E), and (O), we affirm the trial court's judgment.

AFFIRMED.

                              _____

                                   STEVE McKEITHEN
                                     Chief Justice

Submitted on May 29, 2019
Opinion Delivered June 27, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.