

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00032-CV

_____


IN THE INTEREST OF A.M.G., A CHILD



On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 85846



Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

On the petition of the Texas Department of Family and Protective Services (the Department), the trial court terminated Mother's parental rights to her daughter, Abigail,[1] after finding that: (1) Mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Abigail, who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of her removal under Chapter 262 of the Texas Family Code for abuse or neglect and (2) termination of her parental rights was in the child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (2) (Supp. 2018).

On appeal, Mother challenges the legal and factual sufficiency of the evidence supporting both findings. We affirm the trial court's judgment because we conclude that it is supported by legally and factually sufficient evidence.

## I.     Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage

---

[1]To protect the identity of the child, we will use pseudonyms to refer to the child and her parent. *See* TEX. R. APP. P. 9.8(b)(2).

in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

To terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (Supp.); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex.

3

2006) (per curiam). We consider only that evidence that the fact-finder reasonably could have found to be clear and convincing and determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations." *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)); *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. "[I]n making this determination," we must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *C.H.*, 89 S.W.3d at 26).

## II. The Evidence at Trial

It was uncontested at trial that Mother tested positive for methamphetamine at the time of Abigail's removal. After an adversarial hearing, the trial court found that Mother had endangered Abigail's health or safety and entered a temporary order introduced by the Department at trial. As set out by the order, Mother was required to complete a drug and alcohol dependency assessment,

4

psychiatric and psychological evaluations, an individual drug treatment program, individual counseling, and parenting classes. The trial court also ordered Mother to submit to random drug testing, remain drug-free, maintain steady income and stable housing, abstain from criminal activity, and provide proof of attendance at Narcotics Anonymous, Alcoholic's Anonymous, or Celebrate Recovery. The order also required Mother to comply with each requirement of the Department's family service plan, which contained all the requirements of the trial court's order and provided detailed information on how Mother was to accomplish compliance with the order.

The Department's representative, Nate Newell, testified that he provided Mother with a copy of the family service plan, which she signed; explained the plan; and discussed all the requirements Mother needed to fulfill to obtain Abigail's return. Mother admitted that she received the family service plan, but had not completed it.

Newell testified that Mother did not complete any of the above-listed, court-ordered requirements. According to Newell, Mother did not complete any assessments or evaluations, did not attend counseling or any drug treatment programs, never started parenting classes, failed to provide proof of income or stable housing, and refused to submit to random drug testing. Newell also testified that Mother was arrested for a Class C misdemeanor assault while the case was pending. As a result, Newell and Carina Sprong, the court-appointed special advocate, testified that terminating Mother's parental rights to Abigail based on her noncompliance with the trial court's orders was in the child's best interests.

Mother admitted that she was unable to provide stable housing for Abigail. She signed a Rule 11 agreement that was presented by the Department at trial and approved by the trial court.

5

Under the agreement, Mother stipulated that it was in Abigail's best interests to be placed with her cousin, Lola, and Lola's husband, Hector Buford. The trial court terminated Mother's parental rights to Abigail after hearing this evidence.

### III. Sufficient Evidence Supports the Trial Court's Ground O Finding

Ground (O) provides that parental rights may be terminated if the parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Mother admitted at trial that she did not comply with the court order establishing the actions necessary for her to obtain Abigail's return. She also raises no issue on appeal challenging this portion of the Ground O finding. Instead, Mother argues only that the record is silent on (1) whether the child was in the managing conservatorship of the Department for not less than nine months and (2) whether the child was removed for abuse or neglect. We disagree on both grounds.

The Department filed its petition under Chapter 262 of the Texas Family Code on March 13, 2018. At the March 7, 2019, hearing, Newell testified that Abigail had remained in the Department's custody since the date its petition was filed. Newell's testimony, and the trial court's temporary order introduced at trial, proved that Abigail was in the Department's temporary managing conservatorship for not less than nine months.

The evidence at trial also showed that Abigail was removed under Chapter 262 for abuse or neglect. The trial court's temporary orders were issued under Chapter 262 after the trial court

6

found Mother had endangered Abigail's health or safety. The family service plan showed that Abigail was removed because of Mother's drug use and unsanitary home conditions. Newell testified that Mother tested positive for methamphetamine at the time of the removal.

We conclude that the evidence is legally and factually sufficient to establish that Abigail was in the managing conservatorship of the Department for not less than nine months following her removal for abuse or neglect. As a result, we overrule Mother's first point of error.

## IV. Sufficient Evidence Supports the Trial Court's Best-Interests Finding

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at \*7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b). Proof of all factors is not a condition precedent to parental-rights termination. *In re C.H.*, 89 S.W.3d 17, 27

7

(Tex. 2002); *N.L.D.*, 412 S.W.3d at 819. Evidence relating to a single factor may suffice in a particular situation to support a finding that termination is in the best interests of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.).

Mother's brief argues that Newell "gave only broad, conclusory answers with no supporting facts or details as to why [he thought] termination would be in the child's best interest" and questions whether termination of Mother's parental rights was necessary since the child was being placed with the Bufords. She does not otherwise substantively apply the *Holley* factors, which would generally result in a waiver of her complaint. *See In re D.V.*, No. 06-16-00065-CV, 2017 WL 1018606, at *7 (Tex. App.—Texarkana Mar. 16, 2017, pets. denied) (mem. op.).

Here, we find that Newell's testimony about Abigail's best interests was supported by ample evidence. He testified that Abigail, who was two at the time of her removal from Mother, was bonded with the Bufords. According to Newell, Abigail was developmentally delayed when she came into the Department's care, but was improving while in the Bufords' home. Newell testified that while Mother could not meet Abigail's needs because of her drug use, the Bufords would provide her with a stable home and were willing to continue any treatment, including speech therapy and counseling, that the child would need in the future. As a result of Mother's failure to submit to drug testing and take advantage of the programs available to assist her, Newell believed that termination of her parental rights was in the child's best interests. Mother admitted at trial that she could not provide a stable home for Abigail and further testified that it was in Abigail's best interests to be adopted by the Bufords.

8

Given this evidence, a balancing of the *Holley* factors leads us to conclude that the evidence is legally and factually sufficient to support the trial court's best interests finding. As a result, we overrule Mother's last point of error.

**V.    Conclusion**

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    September 26, 2019
Date Decided:      September 27, 2019