**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00227-CV**
_____

**IN THE INTEREST OF E.P.**

_____

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 21-10-13621-CV**
_____

## MEMORANDUM OPINION

This appeal arises from the trial court's termination of Father's parental rights to his minor son, "Eric," following a retrial to the bench.[1] We previously reversed and remanded the trial court's Order terminating Father's rights.[2] *See In re E.G.P.*, No. 09-22-00330-CV, 2023 WL 4013306, at *11 (Tex. App.—Beaumont June 15,

---

[1]In parental rights termination cases, to protect the identity of the minors, we refer to the children and their family members by a pseudonym or initials. *See* Tex. R. App. P. 9.8(b)(2).

[2]We affirmed the trial court's Order terminating Mother's parental rights in the same proceeding, and she is not a party to this appeal. *See In re E.G.P.*, No. 09-22-00330-CV, 2023 WL 4013306, at *11 (Tex. App.—Beaumont June 15, 2023, pet. denied) (mem. op.).

2023, pet. denied) (mem. op.). Following the retrial, the trial court terminated Father's rights based on Texas Family Code subsections 161.001(b)(1)(E), (M), (N) and (O), 161.002(b)(1) and (3) and a finding that termination was in Eric's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1) (E), (M), (N), and (O), (b)(2), 161.002(b)(1), (3). In two issues, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's: (1) findings on section 161.002(b)(1), (3) and predicate grounds N and O; and (2) best interest finding. For the reasons below, we affirm the trial court's Order terminating Father's parental rights.

## I. BACKGROUND

Mother and Father were the subject of an open CPS investigation pertaining to Eric's older siblings when he came into care. In September 2021, the Department amended its petition in that proceeding seeking temporary managing conservatorship of Eric and to terminate Mother's and Father's parental rights. It supported its Petition with an Affidavit of Removal from Department Investigator Mary Nichols. Eric's case was later severed from his siblings' case.

### A. Affidavit of Removal

Nichols averred that the Department received a report shortly after Eric's birth in September 2021 that Eric was born in the hospital, but Mother and Father were running or hiding from the Department. She noted that Mother lied to the caseworker about giving birth since Eric's siblings were already in the Department's care. The

2

report the Department received also raised concerns that Mother and Father were using methamphetamines again. Nichols explained that the report stated Mother was seen running after Father's truck, and the baby was inside the truck but unharmed, and they had no supplies for Eric.

Nichols asserted that the day of the report, she spoke to the maternal grandmother, who lives out of state, and confirmed that Mother gave birth to Eric. Nichols also indicated she spoke with the CASA for the other children, who advised he had not spoken with Mother or Father in over a month, and they had not attended their scheduled visitation with the other children. Nichols described contacting Father at his residence on September 12, 2021, but he refused to let her in the home. Father denied any altercations with Mother.

When informed of his positive drug test from July, Father said he only used once, and it was a long time ago. Father agreed to drug test for the Department. He said he was not attending visits, because he was at work. Nichols outlined Father's criminal history which included burglary, a felony drug offense, assault causing bodily injury, and evading detention.

Nichols explained that she spoke with the conservatorship caseworker who advised that Mother and Father were not compliant with their family plan of service or drug testing. The caseworker advised there had been no contact with the parents

in over a month. The caseworker also said Mother and Father were not participating in scheduled visits.

Nichols outlined that beginning in October 2020, the parents were both the subject of another investigation, and Eric's older sibling tested positive for methamphetamine at birth. Accordingly, the Department put a safety plan in place for the older siblings, which was violated. There was a "reason to believe" determination as to both parents for neglectful supervision of Eric's older siblings. Nichols noted that the older children's case remained open. Nichols stated the Department was seeking temporary conservatorship of Eric, his siblings were in Department custody given concerns of drug use by the parents, and in July 2021, Mother and Father tested positive for methamphetamine.

**B. Service Plan**

The record shows a Family Plan of Service was prepared for Father and filed with the trial court on October 27, 2021. Father did not sign the Plan, but it confirmed that he participated in the conference where the Plan was developed. The Plan noted Father's instability and "extensive drug history[,]" and that he "tested positive during the CPS case." The Plan required Father to: provide documentation of housing and proof of employment; attend a parent collaboration group meeting; complete a parenting skills training and provide a certificate of completion; undergo a drug and alcohol assessment; follow any recommendations for further treatment; participate

4

in drug testing at CPS's request, among other things; undergo a psychological assessment and follow all recommendations; and, cooperate with the Department, maintain contact with the Department, and allow the caseworker access to the home as requested.

In the trial court's Order from the November 12, 2021 status hearing, the trial court found that although Father had not signed the plan, Father "has reviewed and understands the service plan and has been advised that unless he is willing and able to provide the child with a safe environment, . . . his parental and custodial duties and rights may be subject to restriction or to termination[.]" The trial court ordered

> that the plan of service . . . shall continue in full force and effect subject to the following modifications:
>
> All services completed by the parents during the companion case, 20-11-13628, will be considered completed for purposes of this case's service plan. However, if a parent tests positive for drugs after the completion of drug counseling, further drug counseling is ordered for that parent. **IT IS FURTHER ORDERED THAT [FATHER]** and **[MOTHER]** shall successfully complete all recommendations of assessments taken during the companion case as well as all services previously ordered and not completed.

(Emphasis in original.)

### C. Trial

Father was represented by counsel during the retrial, but Father did not attend. The retrial proceeded on section 161.002(1) and (3) grounds plus predicate grounds

5

E, M, N, and O. *See id.* § 161.001(b)(1)(E), (M), (N), (O). We summarize the trial evidence below.

**1. Testimony of Rosario Salinas**

Rosario Salinas testified at trial and formerly worked as a CPS caseworker assigned to Eric and his siblings. Salinas currently works as a CASA supervisor and has been there since July 2022. Salinas testified that Eric came into care as a newborn and during the pendency of another case involving his siblings. Salinas testified that during the investigation involving Eric's siblings, his parents tried "to keep [Eric] from CPS." Salinas explained that CPS was involved with the older siblings due to Mother's and Father's drug abuse, an ongoing issue.

Salinas testified that the Department prepared a service plan in Eric's case and worked with the parents on it, which was like the one in his siblings' case. She provided the service plan to Father and believed he understood what he must do to obtain the return of his child. She did not recall Father working the plan and initially believed the only service Father completed was the parenting class. After being shown documents, Salinas testified that Father also underwent a psychological evaluation and a substance abuse assessment. She said that Father attended the adversary hearing and family group conference, and the report showed that they explained all tasks to him, he understood, and he agreed to work them. Despite going

6

over all the tasks in the service plan that Father needed to complete for Eric's return, he failed to complete them.

Salinas testified that the parents needed to do random drug testing at least twice a month, which she went over with them, and they submitted drug tests for this case. She explained that they scheduled weekly visits, but parents' attendance was unreliable – they would attend for a while then would go several months without any contact. Salinas testified that Father was required to do a DNA test but never did. Father did not maintain employment while the case was pending, and his contact with the Department "was infrequent." Salinas said that Father only visited Eric a few times. Salinas testified that the visits were an important part of the plan for bonding with the child, and Father had a history of failing to visit Eric. She also testified that Eric had not seen Father enough to have a relationship with him.

Salinas testified that Eric was in the agency's care for over nine months and placed in a foster home, where he was doing "[w]onderful." She explained that the case did not progress to reunification, because Father and Mother continued testing positive for drugs, there was no stable housing or employment, and the services were not being met. She explained that Father's rights were terminated in the siblings' case within a year of filing the petition in Eric's case. Salinas testified it was in Eric's best interest for Father's rights to be terminated since Mother and Father were still testing positive for drugs, there was not a stable home for the child, the parents were

7

inconsistent, and Eric is in a stable foster home where he has been since birth, and he has a relationship with his siblings.

## 2. Testimony of Michael Quinn

Michael Quinn also testified at trial. He currently works as a CASA supervisor, but he was initially the volunteer advocate assigned to Eric's case and his siblings' case. Quinn said he was the advocate on the case for a month, then he was the supervisor until September 2023, so he was a part of Eric's life for over two years. Quinn said that in September 2021, Eric came into the Department's care during an open CPS case involving his siblings.

Quinn attended Eric's family group conference where family services were created and gone over, and both parents attended, although he noted that Father missed every other hearing after that plus the first trial. Quinn testified that Father received credit for completing two plan tasks that he had done in the companion case. He explained there were ongoing concerns about Father's drug use, his ability to provide a safe and stable home, and the lack of verifiable employment. Quinn attended some weekly visits and observed that Father appeared uncomfortable and "not confident in his ability to comfort or be with [Eric]." He testified that between November 2021 and March 2022, Father did not visit at all and after that, he only visited infrequently.

Quinn visited Eric in his foster home "at least monthly" and said the child was "[t]hriving" there. He noted that Eric has been in the same foster home since he was a month old. Quinn testified that it was in Eric's best interest to terminate Father's parental rights, because he did not believe Father was "willing or capable of taking care of [Eric's] emotional or physical needs or creating a loving bond."

### 3. Testimony of Randi Sutton

Randi Sutton is the current Department caseworker assigned to Eric and has worked the case since December 2023. Sutton said she visits Eric about once a month. Sutton testified that Eric is doing very well in his foster home, where he has been since he was a month old. She noted that is the only family he has known. Sutton said he is doing great "[h]ealth wise" and "[d]evelopmentally[,]" plus he is in speech therapy and extracurriculars. Eric calls his foster parents "Mommy and Daddy."

Sutton has communicated with Father by text and phone, noting that she was the one who reached out to him. She explained that she advised Father the termination of his rights was reversed, there was a new trial set, and he would need to contact his attorney and provided contact information. Father never contacted her again.

Sutton testified it was in Eric's best interest for Father's rights to be terminated, so his foster parents can adopt him, which they intend to do. She testified

9

that Eric was in the "best permanent place that he can be in. He's thriving there. He's loved there. He's a member of the family, and I wish for it to be a permanent place for him."

### 4. Testimony of Loree McOwen

Since October 2022, Loree McOwen was the assigned CASA advocate for Eric's case. McOwen testified that she is unaware of Father ever reaching out to CASA. She also testified that Eric is "thriving." McOwen said that Eric is in speech therapy and "talking up a storm[.]" She testified the current placement is meeting all Eric's needs, and she believed it was in his best interest to stay there and be adopted.

### 5. Other Evidence

Additional exhibits admitted at trial included: a status report to the court showing that the Department went over the service plan with Father and its requirements; service plans for Mother and Father; court of continuing jurisdiction information; Diligent Search Information; Agreed Temporary Order After Show Cause Hearing; Status Hearing Order requiring that family service plan remain in effect; Paternity Registry Search; and Order of Termination for Eric's siblings terminating Father's rights to the sibling he was the biological father of based on predicate grounds E, N, and O.

## 6. Termination

After hearing the testimony, the trial court reviewed the exhibits. The trial court found that based on the evidence, parentage for Father had not been established, but the Department proved by clear and convincing evidence grounds for termination of Father's parental rights, if any exist, under Texas Family Code sections 161.002(b)(1) and (3). *See id*. § 161.002(b)(1), (3). The trial court also found by clear and convincing evidence that the Department proved termination grounds under Texas Family Code section 161.001(b)(1)(E), (M), (N) and (O) and that termination of Father's parental rights was in Eric's best interest. *See id.* § 161.001(b)(1)(E), (M), (N) and (O). The trial court entered an Order terminating Father's rights consistent with its findings.

## II. ANALYSIS

### A. Predicate Grounds

Liberally construing Father's brief, in issue one, he challenges several independent grounds that the trial court found supported terminating his parental rights, including section 161.001(b)(1) and (3) and predicate grounds N and O. Nevertheless, he fails to challenge the trial court's predicate findings based on E and M. *See id.* Section 161.001(b)(1)(E) allows for termination if the trier of fact finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers

11

the physical or emotional well-being of the child[.]" *Id.* § 161.001(b)(1)(E). Section 161.001(b)(1)(M) allows for termination if the trier of fact finds by clear and convincing evidence that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)[.]" *Id.* § 161.001(b)(1)(M).

The decision to terminate parental rights must be supported by clear and convincing evidence, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (citation omitted); *In re M.S.*, 662 S.W.3d 620, 628 (Tex. App.—Beaumont 2023, pet. denied). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001; *see also In re J.L.*, 163 S.W.3d at 84. Together with a finding that termination is in the child's best interest, only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination. *See* Tex. Fam. Code Ann. § 161.001; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re M.S.*, 662 S.W.3d at 629.

An appellant must challenge all independent grounds that fully support a judgment. *See In re R.M.S.*, No. 09-19-00011-CV, 2019 WL 2620955, at *1 (Tex. App.—Beaumont June 27, 2019, pet. denied) (mem. op.); *In re S.J.R.-Z.*, 537

S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied). By not challenging on appeal the trial court's findings under section 161.001(b)(1)(E) and (M), Father failed to challenge all independent grounds listed in the termination order. Accordingly, we need not review Father's challenges to the sufficiency of the evidence supporting the trial court's findings under subsections 161.002(b)(1), (3), and 161.001(b)(1)(N) and (O), because this Court must accept the unchallenged findings as true and affirm the trial court's findings under subsections (E) and (M). *See In re R.M.S.*, 2019 WL 2620955, at \*1; *In re S.J.R.-Z.*, 537 S.W.3d at 682–83; *In the Interest of N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.). We overrule issue one.

## B. Best Interest

In issue two, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of his parental rights is in Eric's best interest. With two termination grounds being unchallenged, we must affirm the termination if it is in Eric's best interest. *See In re R.M.S.*, 2019 WL 2620955, at \*1; *In the Interest of N.L.D.*, 412 S.W.3d at 818.

In a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re M.S.*, 662 S.W.3d at 628. We assume that the factfinder

resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628.

Under factual sufficiency review, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266 (citation omitted); *In re M.S.*, 662 S.W.3d at 628. We give due consideration to evidence the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628.

Trial courts have wide latitude in determining a child's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong

presumption that the best interest of a child is served by keeping the child with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *see also* Tex. Fam. Code Ann. § 153.131(b). Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

As for a child's best interest, we consider a non-exhaustive list of factors: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) the parent's acts or omissions which may suggest that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re R.M.S.*, 2019 WL 2620955, at *2; *see also* Tex. Fam. Code Ann. § 263.307(b). "No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest." *In re R.M.S.*, 2019 WL 2620955, at *2 (citing *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.)). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *Id.*

In this case, the trial court heard evidence of Father's prior CPS involvement regarding a case with Eric's siblings. Evidence was admitted showing that Father's rights were terminated in that case on an endangerment ground, among others. The trial court also heard testimony that Father's drug use was on ongoing issue, as he continued to test positive. Salinas also testified that Father did not have stable housing or proof of employment. The trial court heard testimony that the case never progressed to reunification because Father and Mother continued to test positive for drugs, Father had no stable housing or employment, and failed to do services.

Witnesses testified that Father failed to participate regularly in visits with Eric, and Father seemed uncomfortable in his ability to comfort him. The trial court heard testimony that Eric had not seen his Father enough to have a relationship with him. Evidence showed that Father failed to complete the necessary services to obtain Eric's return, although the Department developed and went over the service plan with Father, and he understood the requirements. Initially, Salinas testified that the only task Father completed was a parenting class, but after being shown documents, she agreed that he may have undergone a drug and alcohol assessment and psychological assessment. Quinn likewise testified that Father understood the plan but believed he performed only two tasks on the siblings' plan, which he received credit for in this case.

Witnesses also explained that Eric had been with his foster family since infancy and was "thriving" with them. Sutton testified that was the only family Eric had known, and he referred to them as "Mommy and Daddy." Additionally, the foster parents had Eric in speech therapy, he could see his biological siblings, and he participated in extracurricular activities. McOwen testified that the foster parents wished to adopt Eric. There was no excuse offered for Father's acts or omissions. Finally, Salinas, Quinn, and Sutton each testified that it was in Eric's best interest for Father's rights to be terminated.

Having reviewed all the evidence in the light most favorable to the trial court's best interest finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination of Father's parental rights was in Eric's best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. Thus, the evidence was legally sufficient to support the trial court's best interest finding. *See In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. After reviewing the entire record, we note that any disputed evidence that a reasonable factfinder could not have credited in favor of the best interest finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction. *See In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. Therefore, we conclude the evidence was factually sufficient to support the trial court's best interest finding. *See*

*In re J.F.C.*, 96 S.W.3d at 266; *In re M.S.*, 662 S.W.3d at 628. We overrule Father's second issue.

Having overruled Father's issues, we affirm the trial court's Order terminating Father's parental rights to Eric.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on September 30, 2024
Opinion Delivered October 10, 2024

Before Golemon, C.J., Wright and Chambers, JJ.